## Richmond.

### MITCHELL v. THE COMMONWEALTH.

1. On an indictment against M for extorting money from R, an unmarried female, by threats to prosecute her for a criminal offence, on the issue of not guilty, R, as a witness on her examination in chief, spoke of what passed at two interviews between her and the accused; and on cross-examination she stated that there had been several interviews between the two she had spoken of, at which she ascertained that the accused was the person she had seen wandering about her home; the witness will not be required to state generally what passed at these interviews, but only so much, if anything, as bears upon the issue, and what was said in respect to identifying each other in connection with having seen him about the premises of her father.

2. On the trial a paper signed by the witness R, in which she stated that she had in March, 1869, given birth to a child, which she had killed, and Dr. Bass had been sent for to deliver her of the after-birth, was introduced in evidence; which paper the witness stated she had been compelled by the accused to copy and sign and give to him, though she told him at the time it was a lie. And then the counsel for the accused proposed to ask the witness: 1st. In 1869 were you in the family-way? 2d. Were you delivered of a child on the 23d of March, 1869? 3d. Was Dr. David Bass sent for to attend you? 4th. Did he deliver you of the after-birth on the following morning? But the court excluded all the questions. HELD: The questions were irrelevant to the issue, and properly excluded. Whether the female R was virtuous or vicious, she was equally entitled to the protection of the law.

3. The clerk, in arraigning the prisoner, stated to the jury that the *minimum* of the punishment fixed by the law to the offence charged was confinement in the penitentiary for three years, and the *maximum* was five years. The verdict was guilty, and the term of confinement fixed at five years. Upon motion for a new trial, and in arrest of judgment on the ground that the law fixed the *minimum* punishment at one year— HELD:

1. The jury, having fixed the *maximum* period of confinement, it is obvious that they were not misled by the error of the clerk; and it is, therefore, not such an error as is sufficient to set aside or arrest the judgment.

2. If the charge to the jury by the clerk is to be treated as the instruction of the court, it was for the prisoner to except to it at the time. And no objection having been taken to the charge until after the verdict, the court will not set aside the verdict or arrest the judgment on this ground of error, if they are of opinion, from all the circumstances, the prisoner has not been prejudiced by the instruction.

This was an indictment in the county court of Campbell against Jesse E. Mitchell, for obtaining money from Lizzie May Robinson by threats of prosecution for criminal offences, which he charged her with having committed. On the trial the jury found the prisoner guilty, and fixed the term of his imprisonment in the penitentiary at five years; and the court sentenced him accordingly. He then obtained a writ of error to the circuit court of the county, where the judgment of the county court was affirmed. And he thereupon applied to a judge of this court for a writ of error and *supersedeas;* which was awarded. The case is stated in the opinion of *Christian,* J.

*R. G. H. Kean* and *L. G. Marye,* for the prisoner.

*The Attorney-General,* for the Commonwealth.

CHRISTIAN, J., delivered the opinion of the court.

This was a writ of error to a judgment of the circuit court of Campbell county, affirming a judgment of the county court of said county.

The prisoner was indicted in said county court under section 14, chapter 187 of the Code of 1873 (page 1190), for extorting money by threats of injury to the character of

Lizzie May Robinson, the prosecutrix and sole witness in the case.

He was found guilty by a jury and sentenced to the penitentiary, and his term of imprisonment fixed for five years. The indictment charged that the plaintiff in error, on the 7th day of August, in the year 1877, in the county aforesaid, did threaten to injure the character of Lizzie May Robinson, and to accuse her of divers criminal offences, in this: that on the day and year last aforesaid, and in the county aforesaid, he, the said Jesse E. Mitchell, did threaten to accuse her, the said Lizzie May Robinson, of having aided one Thomas T. Robinson to escape from a lawful custody in which he was detained upon a charge of felony, and to cause her to be prosecuted for said offence.

And the indictment further charged, that on the day and year aforesaid, and in the county aforesaid, he, the said Mitchell, did threaten to accuse her, the said Lizzie May Robinson, she being an unmarried woman, of having been pregnant with child, and having feloniously produced an abortion of the said unborn child, and to cause her to be prosecuted for said offence.

And the indictment further charged, that the said Mitchell, on the day and year aforesaid, and in the county aforesaid, did threaten to accuse her, the said Lizzie May Robinson, of having given birth to an infant child, and of having feloniously destroyed and murdered the same, and that he would cause her to be prosecuted for the said offence.

And the indictment further charged that said Mitchell, on the day and year aforesaid, and in the county aforesaid, did feloniously and by means of the said threats extort from her, the said Lizzie May Robinson, an order on the banking house of Miller & Franklin, in the city of Lynchburg, for the sum of five hundred dollars, which sum was deposited in the said banking-house to the credit of the

said Lizzie May Robinson. And that he, the said Mitchell, did, by authority of said order, receive and collect from said banking-house the said sum of $500, in lawful money of the value of $500, the money and property of the said Lizzie May Robinson, against the form of the statute in such case made and provided, and against the peace and dignity of the Commonwealth.

To this indictment the plaintiff in error pleaded not guilty. Upon this issue a jury of said county, after hearing the evidence, returned a verdict in the following words:

"We, the jury, find the prisoner J. E. Mitchell guilty as charged in within indictment, and fix his term of imprisonment in the State penitentiary at five years."

It is to be remarked that in this case there is neither a certificate of facts proved, nor a certificate of the evidence; but only a certificate of so much of the evidence as is applicable to the bills of exception filed.

We will now notice the several bills of exceptions relied upon as grounds of error in this court, in the order in which they are presented in the petition.

The first bill of exceptions is taken to the ruling of the court in respect to certain interviews between the prisoner and the witness. The examination in chief of said witness with respect to said interviews is set forth with much detail, not necessary now to be noticed here; and the prisoner having admitted, on cross-examination, that during the interval between the two interviews to which she had spoken in her examination in chief, there were several other interviews between her and the accused, near the same place where the two interviews referred to in her examination in chief had been held, in which other interviews she had learned from the prisoner that it was he whom she had seen at various times and places around her home, the counsel for the prisoner asked the witness "to state all that was said between her and the accused at the said in-

terviews so had in the said interval." To this inquiry the counsel for the prosecution objected, and the court refused to permit said inquiry to be made, or anything to be asked in respect to what passed at the said last-mentioned interview, "except what, if anything, may have had reference to the threats charged in the indictment, and what was said in respect to identifying each other in connection with her having seen him in the field and about the premises of her father in that interval."

The court is of opinion that there is no error in the ruling of the court.

The witness was asked to state *all that was said* at the interviews referred to. It would have been manifestly error if the court had permitted *everything that was said* between this witness and accused at a secret meeting between them, without respect to its connection with the issue between the Commonwealth and the prisoner, to go in evidence to the jury. The court very properly limited the inquiry to whatever was said at the interview, in reference to the threats charged in the indictment, and as to the identity of the prisoner as the person she had seen in the field and about the premises of her father. The plain meaning of the court was to confine the examination of the witness to so much of the conversation as had any bearing whatever upon the issue which the jury were sworn to try, instead of turning the witness loose to repeat everything that was said by her and the accused at the several secret interviews between them, without respect to the subjects of these conversations.

The court is therefore of opinion that the first bill of exceptions is not well taken.

The second bill of exceptions sets forth that in the course of the cross-examination of Lizzie May Robinson, the chief witness for the prosecution, and the same referred to in the first bill of exceptions, a paper which she had referred to

in her examination in chief, as having been copied by her from one presented to her by the prisoner, and which she stated he required her to copy, and after she had refused, telling him it was a lie and she would not copy it; but which, under the influence of threats made by the prisoner against her character, and of threats to have her arrested on criminal charges, she did finally copy and sign and give to the prisoner, was shown to her and recognized by her to be in her handwriting, in the words and figures following :

"In the year 1869 I was in the family-way. On the 23d of March I was taken sick and delivered of a child, which I killed and afterwards burned. Dr. David E. Bass was sent for and came the following morning and delivered me of the after-birth. No one was in the room when the child was born but my mother.

" Lizzie May Robinson."

"The above is my confession to Jesse E. Mitchell, and I give it to him rather than he expose me, this 30th day of May, 1875, which he promises not to do: provided, I keep Booker Smith from visiting me or speaking to me at any time, and the rest of the Smith family, and that I never go to their house again; should I keep this promise, he is never to expose this confession.

" Lizzie May Robinon."

" Test:

" Jesse E. Mitchell."

And the counsel for the defence asked the witness the following questions :

Look at the first clause of the said paper, and while I do not ask you to make any answer, which, if the fact were true, would subject you to a criminal prosecution, do you now say that all statements therein are a lie ?

To which question the counsel for the prosecution objected.

And the court refused to permit said question to be answered.

And the counsel for the defence asked to be permitted to put the following questions to the witness in connection with said paper : " 1st. In the year 1869 were you in the family-way ? 2d. Were you delivered of a child on the 23d of March, 1869 ? 3d. Was Dr. David E. Bass sent for to attend you ? 4th. Did he (Dr. Bass) deliver you of the after-birth on the following morning ? " To each and all of which questions the counsel for the prosecution objected, and the court refused to permit the same or any of them to be asked or answered, to which opinion and ruling of the court the prisoner by his counsel excepted.

The court is of opinion, that the circuit court was plainly right in refusing to permit these questions to be either asked or answered.

If not inadmissible as tending to criminate and degrade the witness, and lead to a criminal prosecution against her, such questions and answers were clearly inadmissible as irrelevant to the issue the jury were sworn to try.

The prisoner was indicted for extorting money by threats of injury, &c. He pleaded not guilty of such extortion by threats. The simple issue was, did he extort money from the witness by threats ? It matters not how degraded or debased his victim was ; she may have been the lewd and base woman which the questions indicated she was, still the law protects her, as it does the most virtuous and honorable, and because she may be lewd and base is no justification or excuse for the prisoner in extorting money from her by threats. The law will always hold the shield of its protection over the degraded and the criminal, the base and the lewd, as well as over the virtuous, the honest and the good.

The second bill of exceptions is therefore not well taken.

As to the third bill of exceptions, which was taken to the ruling of the court in excluding from the jury a certain paper offered in evidence by the prisoner's counsel, it is sufficient to say that this paper was a note or letter written in pencil on the back of a subpœna summoning a witness who is dead, addressed to nobody, signed by nobody, and not proved to be in the handwriting of the witness. But if it had been clearly so proved, it was totally irrelevant evidence, and did not tend to prove or disprove the issue joined. The court did not err, therefore, in excluding said paper; and the third bill of exceptions is not well taken.

We come now to the fourth and fifth bills of exceptions, which may be considered together—the one taken on a motion for a new trial, and the other on a motion in arrest of judgment, and which in effect raise the same question—which we will now proceed to consider.

It seems that by the act in force at the date of the commission of the alleged offence, the punishment for such offence was confinement in the penitentiary not less than *one* nor more than five years. But the charge given by the clerk to the jury followed the act of March 14, 1878, which prescribed that the punishment for the offence of which the prisoner stood charged shall be confinement in the penitentiary for not less than *three* nor more than five years. It is insisted that this charge by the clerk was equivalent to an instruction given by the court, and must be treated as an erroneous instruction of the court. And the court having given an erroneous instruction, the verdict must therefore be set aside, and a new trial awarded to the prisoner.

In support of this proposition, the case of *Allen* v. *Commonwealth*, 2 Leigh, 727, is relied upon by the learned counsel for the prisoner. In that case the offence for which the prisoner was indicted was punishable by confinement in the penitentiary for not less than *one* nor more than *three*

years; while the clerk charged the jury that the term of imprisonment was for a period of not less than *two* nor more than three years. In that case the verdict ascertained the the term of imprisonment at *two* years; which was the *minimum* term as charged by the clerk; while in fact the *minimum* term, as provided by law, was *one* year. Judge Field, in delivering the opinion of the court in that case, said : "The charge given by the clerk to the jury was erroneous, and was well calculated to mislead them as to the legal term of imprisonment. It was equivalent to an instruction from the court; it was given by an officer of the court, in the usual course of his duty, in the presence and hearing of the court; and not having been corrected by the court, must be regarded as sanctioned by it. What effect it had does not appear from anything in the record. But it *may* have induced the jury to agree upon the term of *two* years for the prisoner's confinement in the penitentiary, believing that to be the *minimum,* when, if they had been correctly informed of the law, they might have ascertained his imprisonment to be *one* year only."

Now, in the case before us the verdict of the jury fixed the term of imprisonment at *five* years, which is the *maximum* term of imprisonment fixed by law, and the *maximum* declared by the charge of the clerk to the jury. It cannot be said in this case, as in *Allen's case,* that the jury was misled by the charge of the clerk, although it was erroneous, and that they *might* have found a verdict for a different period if they had been correctly informed of the law. If their verdict had fixed the term of imprisonment at *three* years, the *minimum* erroneously charged by the clerk, then all the reasoning of the judge held in *Allen's case* would apply with full force. But the jury fixed upon the *maximum* period, and that period having been *correctly* stated in the charge of the clerk, it cannot be said that they were misled. It is plain that if the clerk had also correctly

stated the *minimum* as well as the *maximum* period, the verdict would have been precisely the same.

It is impossible to say that the prisoner was in any way prejudiced by the erroneous charge of the clerk, or to conceive in what respect he could have been benefited if the *minimum* period of punishment had been correctly stated by the clerk.

But there is another view of this case, which, we think, is conclusive to show that the appellate court ought not to set aside the verdict, or arrest the judgment in this case, because of the erroneous charge of the clerk.

As we have seen, as declared by the general court in *Allen's case, supra,* the charge given by a clerk to a jury in a criminal case is equivalent to an instruction of the court. Taking it, then, as an erroneous instruction of the court, the prisoner did not except to it. Now, as was said in *Bull's case,* 14 Gratt. 613, 625, "If a party be dissatisfied with an instruction, he ought to state his objections at the time, in order that the court may have an opportunity of removing them. If no objection be made at the time, but objection be made for the first time after verdict, and in the form of a motion to set it aside, the court will consider whether, under all the circumstances, the party has been prejudiced by the instruction, and if of opinion that a just verdict has been rendered according to the law and the evidence, will not set it aside on account of that objection."

Now, regarding the charge of the clerk as an instruction of the court, and admitting that it was erroneous in not correctly stating the law, yet not being excepted to until after verdict, and it being plain that the prisoner was not prejudiced by such erroneous instruction, the court will not on that account set aside the verdict.

In the case before us, the law changing the *minimum* period of imprisonment from *three* years to *one* year had been so recently amended that it is probable the attention

neither of the clerk, nor the Commonwealth's attorney, nor the prisoner's counsel had been called to the amendment. But however that may be, the maximum of the punishment being the same in both the old and the new law, and the verdict being for the maximum period of punishment, it is plain that the prisoner has not been prejudiced, nor was the jury misled by the erroneous charge of the clerk.

Upon the whole case, we are of opinion that the judgment of the circuit court of Campbell, affirming the judgment of the county court of Campbell, must be affirmed.

JUDGMENT AFFIRMED.