## STATE v. THOMAS J. COLEMAN.[1]

### December 20, 1906.

### Nos. 15,046—(115).

**Extortion—Presumption of Intent.**

Payment of money to another, induced by fear of exposure by such person of a compromising situation with a woman, constitutes extortion within the meaning of the statute (R. L. 1905, § 5096), and it is not necessary to prove intent as an independent fact. The essential facts constituting extortion being established, intent is presumed.

**Evidence.**

Appellant brought about a series of events which resulted in placing P. in a compromising situation, and which induced him to pay money to appellant as the result of fear, to avoid exposure. It is immaterial that appellant may have originally intended merely to secure evidence against

[1]Reported in 110 N. W. 5.

P. to be used in a divorce suit. Having created the situation, he could not accept hush money, paid under the stress of fear, and claim immunity simply because no express threat was made.

**Same.**

The real relations between the state's witnesses, P. and the girl who lured him into the compromising situation, was a collateral matter, having nothing to do with the offense charged.

Defendant was convicted in the district court for Hennepin county of the crime set forth in the opinion, and appealed from an order of Fred V. Brown, J., denying a motion for a new trial. Affirmed.

*W. E. Dodge* and *E. L. Sutton,* for appellant.

*Edward T. Young,* Attorney General, *Charles S. Jelley,* Assistant Attorney General, and *Al. J. Smith,* County Attorney, for the State.

LEWIS, J.

Appellant was indicted for the crime of extortion, it being charged that March 26, 1906, at the city of Minneapolis, with intent to extort and gain property from William D. Pencille, appellant obtained from him $500 by means of a threat to publicly accuse him of criminal relations with Louise Oelkers. The trial resulted in a verdict of guilty.

The chief witnesses on behalf of the state to sustain the charge were Pencille and Louise Oelkers, and from their testimony it appears that Pencille was married and Louise Oelkers unmarried and about nineteen years old, employed as a servant in Pencille's household. An action for divorce had been commenced against Pencille by his wife who had previously left him, and appellant, a private detective in Minneapolis, was employed by her attorneys to secure evidence against Pencille.

The evidence is sufficient to prove that appellant entered into a scheme with Louise Oelkers to put Pencille in a compromising position with her for the purpose of using the evidence in the divorce suit, and further, that, having accomplished that purpose, he took advantage of the situation to extort money from Pencille. Appellant commenced operations by looking up the girl at Rochester, employed her to do housework in his family, induced her to write to Pencille to make an appointment with her at Minneapolis, arranged for a meeting between the two at a certain rooming house and requested the girl to keep the appointment. Pencille arrived in answer to the girl's letters and met

her according to appointment, registered at the rooming house as man and wife under an assumed name, and after he had been with her some time in the room assigned them, appellant, pursuant to his understanding with the girl, knocked on the door, and when it was opened entered and pretended great surprise at finding them together.

Several interviews between Pencille and appellant followed, and, according to Pencille, he was told by appellant that, upon payment of $1,000, the matter would be silenced, and, this being refused, an arrangement was finally made on the basis of $600; that Pencille returned to his home and, in accordance with the agreement, sent $100 to appellant by express, and some time thereafter came to Minneapolis for the purpose of paying over the other $500, when appellant "held him up" for another $100, for which he finally executed his note and paid the $500 in cash, making a total of $700.

Louise Oelkers testified that she received $50 and no more from appellant, and stated in detail the arrangement between herself and appellant; that she wrote Pencille at appellant's dictation, and carried out the scheme and appointment with Pencille according to appellant's plans in order to secure the money.

Appellant denied that Pencille ever paid him any money whatever; admitted that he received by express a package of $100, but that it was sent to him for Louise Oelkers and that he turned it over to her, and claimed that, in arranging the meeting between Pencille and the girl, he was acting within the scope of his employment as a private detective to secure evidence for his employer; denies that he ever threatened to expose Pencille; and claims that Pencille made overtures to him to hush the matter and offered him $1,000 for that purpose, which he declined to accept. To corroborate appellant, certain witnesses were produced who testified that they were in a neighboring flat and overheard a conversation between appellant and Pencille in which he offered appellant $1,000 to quiet the matter.

Without entering any further into the particulars of the case, we will simply state that the credibility of all these witnesses was for the trial court and the jury, and, if the story detailed by Pencille and Louise Oelkers was true, being corroborated by other circumstantial evidence, the jury were justified in finding appellant guilty of the offense charged.

Extortion is defined in the Revised Laws, § 5096, as "the obtaining

of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right." The statute then proceeds to define in particular what constitutes extortion, and, among other things, it is declared that

> Every person who shall induce another by a threat to do an unlawful injury to the person or property of the one threatened * * * or to accuse him * * * of any crime, or to expose or impute to him * * * any deformity or disgrace, or to expose any secret affecting him, * * * and every person who shall extort any money or other property from another under circumstances not amounting to robbery, by means of force or any threat hereinbefore mentioned shall be guilty of extortion.

The court charged the jury as follows:

> Extortion, so far as it is necessary to define it in this case, consists in obtaining the property of another with his consent, induced by the wrongful use of fear. The offense differs from larceny, which is unlawfully obtaining the property of another without the consent of the other, in that the consent of the owner of the property does not constitute a defense to the indictment, but on the other hand does constitute an essential element of the offense, if such consent is obtained by the wrongful use of force or fear. Under the statute creating and defining the offense, every person who shall induce another by a threat to accuse him of a crime, or expose or impute to him any deformity, or disgrace, or to expose any secret affecting him, to consent to part with his money or property under circumstances not amounting to a robbery, is guilty of extortion. There are three essential elements in this offense: (1) A threat to do one or more of the things mentioned in this statute; (2) the existence of a feeling of fear induced by such threats; and (3) the obtaining of property or money of another with his consent, induced by such fear and threat.

The court further charged that, if the jury should find from the testimony that appellant did make a threat to expose Pencille, or to impute

disgrace to him concerning his relations with Louise Oelkers, and that such threat induced a fear in his mind through which he was led to, and did part with $500, then they should find him guilty of the offense charged in the indictment.

The court further stated that, in determining whether or not a threat was made and the money was paid through fear, the question of the relationship between Pencille and Louise Oelkers, whether criminal or not, was immaterial, and that the real question for determination was not what the actual relations between the parties were, but did appellant threaten to expose Pencille to disgrace by reason of improper relations with the girl, and did such threat induce Pencille to pay appellant money?

Exception was taken to the charge upon the ground that the threat to use the knowledge obtained from the relations of Pencille and the girl as evidence in the divorce action was not an unlawful act, and that such a declaration was not a threat, within the meaning of the statute.

It seems to us that this criticism of the charge is entirely unfounded. In the first place, there is no criterion in law or morals which would justify even a private detective in thus persuading a weak-minded girl to place herself in a compromising situation, even for the purpose of procuring evidence for a prospective divorce suit, but, conceding that such conduct was justifiable under the circumstances, and that it was appellant's original intention to use the evidence so obtained for a legitimate purpose, yet if, after luring his victim into the trap, he was induced by fear of exposure to pay appellant money to prevent the evidence being used, or made public, then appellant immediately abandoned his so-called legitimate enterprise and became guilty of the crime charged in the indictment. It matters not whether the threat was expressly conveyed, or whether it was implied by the position of the parties brought about by appellant.

Appellant seeks to defend himself upon the plea that the money was not paid pursuant to a threat made by him, but that Pencille made the advances and voluntarily paid it to avoid exposure. The position is untenable as a defense. Appellant, having created the situation, and knowing the effect it might have on the mind of Pencille, took advantage of the fear thus created the moment he took the money knowing it

was paid for the purpose of purchasing silence. Under such circumstances, it is not important if he did not originally intend to bring about the situation for the ultimate purpose of extorting money, or that he did not expressly threaten exposure in case the money was not paid.

The point is made that there was no evidence in the case to show wrongful intent on the part of appellant, that intent is the gist of the offense charged, and that the trial court should have instructed the jury that intent could not be presumed but must be proven. In some jurisdictions, notably Iowa, intent to commit the crime of extortion is made the gist of the offense, and, in State v. Debolt, 104 Iowa, 105, 73 N. W. 499, it was held that intent cannot be presumed but must be strictly proven.

Our statute is different, and, as applied to this case, makes the gist of the offense the obtaining of money by means of a threat. The statute does not make it necessary to prove intent as an independent fact. The state claims to have proven by creditable evidence that appellant brought about a series of events by which he inveigled Pencille into a compromising position, that he held over him the threat of exposure which induced him to give appellant money to avoid it. If these facts are true, then the natural inference is that appellant intended such result should be accomplished when he accepted the money.

In State v. Kortgaard, 62 Minn. 7, 16, 64 N. W. 51, the trial court instructed the jury that the law presumed in making overdrafts it was with intent to defraud the bank, and, in speaking on the question of intent, the court said: "When an act, in itself indifferent, becomes criminal only when done with a particular intent, the intent must be proved, but, when the act is in itself unlawful, the criminal intent is presumed from the intentional commission of the act." In State v. McGregor, 88 Minn. 77, 92 N. W. 458, the court said: "It is the claim of the defendant that the evidence at most shows no more than a conversion of the watch, which would render him liable therefor in a civil action, but that it falls short of showing that he converted it with criminal intent to deprive the owner of his property. But, when an act is in itself unlawful, the criminal intent is presumed prima facie from the intentional commission of the act." Citing State v. Kortgaard, supra. A banker who receives money on deposit is presumed to know whether

his bank is insolvent.    State v. Quackenbush, 98 Minn. 515, 108 N. W. 953.

The court was correct in instructing the jury that, if they found the facts as above stated to be true, then they should find appellant guilty of the crime charged in the indictment.

Exception was taken to the charge of the court that the question of relationship between. Pencille and Louise Oelkers, whether criminal or not, was immaterial.  The court was entirely correct.  The relationship between the parties was a purely collateral matter, having nothing to do with the real issue presented by the indictment.  We find no error in the charge, nor in any of the rulings.

Order affirmed.