[Crim. No. 2796. Third Dist. Feb. 4, 1958.]

THE PEOPLE, Respondent, v. FREDERICK M. FOX, Appellant.

---

*Assigned by Chairman of Judicial Council.

Frederick M. Fox, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

PEEK, J.—By an indictment Frederick M. Fox and his wife, Susan, were charged in Count I thereof with the crime of violating section 523 of the Penal Code, sending a threatening letter with the intent to extort money from one John Graffigna by threatening to expose him to disgrace and threat-

ening the exposure of secrets affecting him. In Count II of the indictment Frederick alone was charged with a violation of section 217 of the Penal Code in that he assaulted Graffigna with the intent to commit murder. A motion to set aside the indictment on the grounds of insufficiency of the evidence, as well as a motion for separate trials, was denied. The case then proceeded to trial before a jury which returned verdicts finding both defendants guilty as charged in Count I, and the defendant Frederick not guilty as charged in Count II. Probation was denied, as was defendants' motion for a new trial. Thereafter a letter was filed by Frederick in which he stated, "I wish to appeal my case." Nothing was filed on behalf of Susan, nor did she herself take any further action. However the brief filed by Frederick purports to be on behalf of both defendants. Under such circumstances it would appear that the purported appeal by Susan must be dismissed.

Section 523 of the Penal Code provides:

"Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat."

The portion of section 519 pertinent to the charge contained in Count I provides:

"Fear, such as will constitute extortion, may be induced by a threat, either:

. . . . . . . . . . . . .

"3. To expose, or to impute to him, or them . . . disgrace . . .

"4. To expose any secret affecting him or them."

Thus to constitute a crime and sustain a conviction under Count I, it was necessary for the state to prove that defendants, with the intent to extort money through fear, sent a letter to John Graffigna which contained either a direct or implied threat, or was adapted to imply a threat, to expose some secret affecting him and to expose him to disgrace. The crime so defined by statute is complete when the letter is delivered to someone to be forwarded or posted. (Pen. Code, § 660.)

Defendant Frederick now contends (1) that the evidence was insufficient to support the verdict of the jury and the judgment of the trial court; (2) that the court improperly joined the offenses of violating sections 523 and 217 of the

Penal Code; (3) that defendant was denied his right of cross-examination; and (4) that the trial court improperly instructed the jury.

 The record shows that the defendants who were residents of Glendale arrived in Lodi on December 16, 1956. At that time the alleged victim and his wife were involved in a divorce proceeding, the second which the wife had instituted. Graffigna had left their home pursuant to a court order in the divorce proceeding and was living in a Lodi motel. He also maintained a room at the Hotel Lodi. The defendants endeavored to contact him at his hotel on December 17 but were unsuccessful. They then made an appointment to meet Mrs. Graffigna at her home that evening. The defendants stated to her that they had information which concerned the conduct of Graffigna with one Sandra Brookshire, a neighbor of theirs in Glendale. Mrs. Graffigna told defendants she desired the information and would call her attorneys the next day and instruct them to pay defendants $800. This sum purportedly represented the amount which defendants stated they had advanced to Mrs. Brookshire. The defendants admit that after leaving the home of Mrs. Graffigna at approximately 2 a. m. they stopped at the Hotel Lodi and left with the clerk a letter for delivery to Graffigna. The letter reads as follows:

"John Graffigna: I have tried to contact you since Saturday evening so I'll try this method now. This business concerns Mrs. Elsie Brookshire and yourself, plus a trip you made to Los Angeles recently. I will call at the desk later in the morning. Leave an address or number with the desk clerk where I can contact you. If don't hear from you by noon am going to contact your wife. [Signed.] Mr. and Mrs. Fox."

The following morning defendants talked with Graffigna, during the course of which conversation they implied that he was the father of Mrs. Brookshire's child and accused him of mistreating her during a recent trip to Glendale. They further stated that they had advanced $800 to her; that she had informed them he would repay the same; that unless he paid the money to them they would go to Mrs. Graffigna and reveal to her his association with Mrs. Brookshire. During this meeting the defendants also told Graffigna that the information they had was all written down in a book; that such information was all damaging to him; that with such information his wife would "clean . . . [him] up" in the divorce proceeding. They further threatened that they would go to the Internal Revenue office and he would be subject to an account-

ing. Later that morning the defendants talked to Mrs. Graffigna and asked if she had the money. Upon being informed she did not, appellant said he "would get it one way or another," and that to expose Graffigna he would go to the newspapers with some pictures that he had, or he would go to the Internal Revenue office. Pursuant to Mrs. Graffigna's telephone call to her attorney, defendants went to his office where they obtained the money and later delivered the book to Mrs. Graffigna.

In support of his first contention, appellant contends the evidence shows that no threat was made, nor was the element of fear present in the case. ■ "It is not necessary that a threat should be apparent from the face of the letter, nor even necessary that it should be implied therefrom. The statute says that if the language used is adapted to imply a threat, then the writing is sufficient." (*People* v. *Choynski*, 95 Cal. 640, 641-642 [30 P. 791].) ■ Furthermore it is well settled that the crime here charged ". . . depends upon the conduct and intent of the person who makes the threat, and that the effect produced upon the person against whom. it is made is immaterial, so that if the . . . evidence warranted the jury in believing that the defendant intended that his threat would produce 'fear' in the mind of . . . [Graffigna], and if the threat was of such character as might reasonably have that result, it would be wholly immaterial that . . . [Graffigna] was unaffected thereby." (*People* v. *Robinson*, 130 Cal.App. 664, 668 [20 P.2d 369].) ■ The elements of threat and fear being questions of fact for the jury's determination, its finding in that regard will not be set aside where the evidence, as in the present case, supports its conclusion.

■ Appellant's next contention is that the court improperly allowed the joinder of the offense charged in Count I with that charged in Count II. We find no more basis for the joinder in the instant case than we did in *People* v. *Renier*, 148 Cal.App.2d 516 [306 P.2d 917]. But we conclude, as we did there, that the record is so overwhelmingly against defendants as to Count I, there could be no question of prejudice within the meaning of article VI, section 4½, of the Constitution.

■ It is appellant's next contention that the court erred in limiting his counsel's cross-examination of prosecution witnesses. His primary contention in this regard is that he was precluded from showing the relationship between Graf-

figna and Mrs. Brookshire; that the relationship was well known to Mrs. Graffigna, and hence there could be no secret to expose. However it is the rule that the truth or falsity of the charge is wholly immaterial. (*People* v. *Choynski, supra.*) Necessarily, therefore, no prejudice could result from the curtailment of cross-examination on irrelevant matters.

It is finally contended that the court erred in its instructions to the jury, particularly in the giving of the following instruction:

"The defendants are entitled to your individual opinions and you should not change your opinions unless you are convinced beyond a reasonable doubt of the guilt or innocence of the defendants."

There can be no question but that the challenged instruction was erroneous. (*People* v. *T. Wah Hing*, 15 Cal.App. 195 [114 P. 416].) However, under the mandatory provisions of article VI, section 4½, of the Constitution, this court, by reason of the record before us, could not reverse the instant case in the absence of a showing that the defendant was so prejudiced thereby that a reversal would be compelled. First defendants admit they wrote the letter and gave it to the hotel clerk for delivery to Graffigna. Second, even if it could be said that the letter on its face was insufficient to support a conviction of the crime charged, the testimony of the Graffignas was more than sufficient to establish the intent of the defendants.

The purported appeal of the defendant, Susan Fox, is dismissed. The judgment of conviction as to the defendant, Frederick Fox, is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.