**Richmond**

SARAH MACGUFFY WOOD

v.

COMMONWEALTH OF VIRGINIA

No. 1458-87-2

Decided August 15, 1989

COUNSEL

Craig S. Cooley (Brown and Cooley, on brief), for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—In this appeal of an extortion conviction, we conclude that the Commonwealth was not required to prove the falsity of an allegation underlying a threat to injure a victim's character. The crime of extortion addresses the malice found in obtaining money or other value by threatening to harm another's character; it is not concerned with whether the accusation, by which the harm is threatened, is true or false.

At trial there was evidence that the defendant attempted to extort money from Kubacki by threatening to claim that he had raped her if he did not give her the money she sought. The defendant and Kubacki had engaged in sexual intercourse at the defendant's apartment late one evening while they were alone. Kubacki contends that it was consensual, but the defendant contends that it was not. The next evening the defendant asked the victim to return to her apartment, and, when he did, Kubacki discovered the defendant in the company of four other individuals. Two of them were men, one armed with a baseball bat, who blocked the door so that Kubacki could not leave. The defendant then accused Kubacki of raping her and told him there was no way he was going to get out of the apartment. When Kubacki asked what he could do in order to leave, the defendant told him that she needed $700. Kubacki was then allowed to leave after he told the defend-

ant that he did not have the money but would attempt to borrow it.

Kubacki immediately reported the incident to the police. Later, Kubacki returned a telephone call from the defendant while a police detective was listening on an extension. During the telephone conversation, the defendant repeated her demand for $700 and told Kubacki that, if she did not get the money, she would call the police and have him arrested for rape.

The Commonwealth indicted the defendant for threatening "injury to the character" of Kubacki in an attempt to extort money from him. The statutory offense of extortion includes threatening "injury to the character, person, or property of another person." Code § 18.2-59. This is in addition to an offense resulting from accusing a person "of any offense." *Id.*

The defendant contends that by choosing to indict her for threatening injury to the character of Kubacki rather than for accusing him of "any offense," the Commonwealth had a greater burden of proof. She concedes that had she been charged with extorting money by accusing Kubacki of an "offense" the Commonwealth would not have been required to prove the falsity of the accusation, *see Mitchell v. Commonwealth*, 75 Va. 856, 862 (1880); however, since the Commonwealth elected to charge her instead with threatening to injure Kubacki's character, she argues that the Commonwealth had to prove that the accusation was false. We disagree and hold that it is not necessary for the Commonwealth to prove that an accusation underlying a threat is false, even though the threatened injury is to the character of a person and does not constitute an accusation of an offense.

■ The statutory offense with which the defendant was charged contains two elements. The first is either (1) threatening to injure "the character, person or property of another person" or (2) accusing another person "of any offense." Code § 18.2-59. The second element consists of the extortion of any money or other valuable property or benefit from the other person. *Id.* The offense consists of a threat or accusation coupled with an extortion of money or other benefit.

■ The decisive element of extortion is obtaining money from a victim through threats. *Mitchell*, 75 Va. at 862. Public disclo-

sure or even proposed public disclosure is not extortion unless coupled with an effort to obtain money or other value from the victim. Code § 18.2-59. The character of the victim and, consequently, the truthfulness of the threat are immaterial. *Mitchell*, 75 Va. at 862. "The law will always hold the shield of its protection over the degraded and the criminal, the base and the lewd, as well as over the virtuous, the honest and the good." *Id.*

Other courts which have considered whether truth of the threatened disclosure is a defense to extortion or like crimes have also generally concluded that it is not. *People v. Fox*, 157 Cal. App. 2d 426, _____, 321 P.2d 103, 106 (1958); *People v. Downey*, 120 Ill. App. 456, 460, 458 N.E.2d 160, 163 (1983); *Eacock v. State*, 169 Ind. 488, 500-01, 82 N.E. 1039, 1044-45 (1907); *State v. Coleman*, 99 Minn. 487, 491, 110 N.W. 5, 7 (1906); *Wilson v. State*, 306 P.2d 717, 731 (Okla. Crim. App. 1956); *see also Annot.* 39 A.L.R. 4th 1011 (1985). The opinions reaching contrary results are not persuasive. *People v. Wightman*, 104 N.Y. 598, 602, 11 N.E. 135, 136 (1887); *Landry v. Daley*, 280 F. Supp. 938, 963 (N.D.Ill. 1968), *rev'd on other grounds sub nom, Boyle v. Landry*, 401 U.S. 77 (1971).

Therefore, we conclude that it was not necessary for the Commonwealth to prove that the alleged rape actually did not occur. It was sufficient that the defendant used the threat of disclosing the alleged rape to attempt to obtain money from Kubacki.

The defendant also contends that the evidence failed to establish beyond a reasonable doubt that she attempted to extort money from Kubacki. She argues that, instead, the evidence proves that Kubacki attempted to bribe her to refrain from asserting the allegation of rape. Her theory was supported by her testimony and the testimony of two of the four persons in the apartment at the time the money was first discussed. However, Kubacki's testimony supported the Commonwealth's contention that she had attempted to extort money from him.

We may not weigh the evidence as the jury was required to do. Rather, we must "look to the whole evidence and view it with the conflicts . . . and the fair inferences . . . settled as determined by the jury." *Russo v. Commonwealth*, 207 Va. 251, 252, 148 S.E.2d 820, 822 (1966). We are required to view the evidence in the light most favorable to the Commonwealth. *See Higginbot-*

*ham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). When viewed in this light the evidence, although conflicting, was sufficient to establish that the defendant attempted to extort money from Kubacki.

For these reasons, the judgment of conviction is affirmed.

*Affirmed.*

Keenan, J., concurred.

Benton, J., dissenting.

Because the evidence does not negate an attempt by Gregory Kubacki to bribe Sarah MacGuffy Wood into withdrawing her criminal complaint, the Commonwealth did not proved beyond a reasonable doubt that Wood attempted to extort money from Kubacki. The evidence in this case, in fact, established that it was the defendant Wood who was the victim of Kubacki's unlawful attempt to bribe her. Kubacki, whom Wood had known for seven years, was in Wood's apartment late one evening with Wood and other friends of Wood. As her friends began to leave, in the early morning, Wood asked two of her female friends not to leave because Kubacki, who had consumed a lot of beer, was still in the apartment. They stayed for a while but then left Wood in the apartment with Kubacki. Wood testified that after her friends left her apartment she talked with Kubacki about her boyfriend, who was in jail. She further testified that Kubacki attempted to kiss her and raped her after she rebuffed him. Kubacki testified that they engaged in consensual sexual intercourse.

After Kubacki left, Wood called the rape hot line and talked to a counselor. Later that day she talked twice more to a counselor and then called the police to report the rape. Wood testified that she requested to speak to a detective or female officer. A patrolman, William Stevens, arrived and spoke with Wood about the details of the incident. Stevens told her "that she would have to get up in court and testify exactly what happened, describe exactly what happened." After he told Wood about the defense of consent, Wood told him that she wanted to talk to her father. Stevens also testified that he offered to send a detective to speak to Wood.

Later that evening, at the urging of a male friend, Wood telephoned Kubacki and asked him to come to her apartment. Kubacki arrived at Wood's apartment shortly thereafter with a paper bag in his hand. According to Wood, when Kubacki arrived, he apologized for having raped her and asked her not to call the police. Wood "told him that [she] already had." Wood testified that Kubacki asked her not to call the police again and asked the amount of the bail for her boyfriend. Wood testified that she told him that the bail was $700 and he offered to give her that amount. According to Kubacki, Wood accused him of rape in the presence of two of her male friends, who blocked the door, and she stated that she needed $700 to get her boyfriend out of jail.

When Kubacki left the apartment, Wood called the police to make a formal complaint. Upon leaving Wood's apartment Kubacki was pursued by two of Wood's male friends. Kubacki testified that he used a stick to ward them off. One of Wood's male friends testified that Kubacki pulled a gun from the bag and threatened to shoot. Kubacki called the police when he reached home and spoke with patrolman Brightwell. Later that evening Brightwell and Stevens, who had received a report of Wood's call to file a formal complaint, went to Kubacki's residence. With Brightwell listening on an extension, Kubacki called Wood. Brightwell testified as to the substance of the conversation:

> At first he told her that he couldn't get the money until he could see his boss, I believe it was on Monday, and borrow the money from him. I was writing notes to Mr. Kubacki telling him what to ask her and what to tell her during the conversation. I wrote him a note to ask her what she wanted the money for. He asked her that. She said to get her boyfriend out of jail. Then Mr. Kubacki asked her what she would do if he wouldn't pay her the money. He said that's a lot of money, what if I can't pay it. And, she said, well, the police officer is still going to be working until 2:00 o'clock or 3:00 o'clock and I will call him back and make a report.

The indictment charged that Wood "did feloniously and unlawfully threaten injury to the character of Gregory E. Kubacki thereby did attempt to extort money from Gregory E. Kubacki."

"Whenever the evidence leaves indifferent which of several hypotheses is true, or merely establishes only some finite probability

in favor of one hypothesis, such evidence does not amount to proof of guilt beyond a reasonable doubt." *Sutphin v. Commonwealth*, 1 Va. App. 241, 248, 337 S.E.2d 897, 900 (1985).

> It is well settled . . . that to justify conviction of a crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must establish the guilt of an accused beyond a reasonable doubt. It must exclude every reasonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

*Cameron v. Commonwealth*, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970) (citations omitted).

Based on this evidence the proof of extortion does not rise to the level of proof beyond a reasonable doubt. Although Kubacki disputes that he initiated the subject of money with Wood when he returned to her apartment at her request, Wood and two other persons who were in the apartment when the conversation occurred testified unequivocally that Kubacki offered Wood money and asked that she not contact the police. Kubacki also denied that he told Wood anything about the money while the police officer was listening to his telephone conversation with Wood. He stated, "I did not tell her nothing about the money. ·. . . I didn't say I would get it or I wouldn't get it." However, the police officer who listened during Kubacki's telephone conversation testified that Kubacki initiated the conversation concerning the money. These facts are not inconsistent with Wood's innocence. Accordingly, I would reverse the conviction.