COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia

NEELAB HASHIMI AHMADZI

MEMORANDUM OPINION* BY
v.      Record No. 0384-19-4          JUDGE JAMES W. HALEY, JR.
MARCH 24, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge

Tabatha N. Blake, Assistant Public Defender, for appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Neelab Hashimi Ahmadzi, appellant, was convicted in a jury trial of extortion.[1] She

argues on appeal that the evidence was insufficient to sustain her conviction because there was

no connection between the victim's voluntarily paying for her services as agreed and any threat

or accusation that she made. The Commonwealth agrees with appellant. Having independently

reviewed the record, we reverse the conviction and dismiss the indictment.

BACKGROUND

We state the facts in the light most favorable to the Commonwealth, the prevailing party

at trial. Gerald v. Commonwealth, 295 Va. 469, 472 (2018). On January 26, 2018, the victim

contacted appellant after finding an ad she had placed, under the name "Layla," on the website

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also was convicted of impersonating a law enforcement officer and giving a false report to a law enforcement officer, but she has not challenged those convictions. The jury acquitted her of grand larceny.

"Cityvibe.com." The website included advertising for prostitution. Appellant proposed two sex acts, telling the victim that a "blow job" would cost $50 and "the full job" would cost $250. When the victim stated that he wanted an hour of companionship, appellant replied, "that's going to be the full job price." Noting that it was "pretty late," appellant confirmed that the victim wanted an appointment and gave him her address.

When the victim arrived at appellant's apartment building, she let him into the secured building and led him up to her apartment. The victim removed his shoes in the foyer and noticed that the lights were on only in the foyer and a room down the hallway. Appellant directed him to a bedroom. He was "so nervous" that he asked for a glass of water, which she gave him. She "then just started describing, again, what she wanted," but the victim told her that he did not know if he physically could do "any of that"[2] and he just wanted "to have some time here." Appellant replied, "well, you've got to pay me first anyway. Doesn't matter. You've got to pay me." The victim said "okay," and removed his wallet from his pocket. Before he left his residence, he had placed $260, the agreed hourly price plus tip, in an envelope marked "Layla" in his wallet.

When the victim opened his wallet, appellant "reached over and grabbed the envelope," but she did not take other money from the wallet. Appellant then told the victim that she was a sergeant with the Loudoun County Sheriff's Office, he was under arrest for solicitation, and there were two Loudoun County officers outside. Appellant appeared to communicate with other officers on her phone. She placed the envelope with the money on the dresser and reached behind her back, causing the victim to conclude that she was reaching for handcuffs. She told the victim that the officers were conducting a "sting operation" targeting Russian sex traffickers and would let him go if he gave her a reason to do so. After the victim explained that his wife of

---

[2] The victim stated he suffers from "severe E.D."

twenty years recently had left him, appellant said, "all right, that's good enough." She started to hand the money back to the victim but instead walked away into another room, saying, "no, I think it's better to teach you a lesson." The victim heard a "tearing noise" and then a flushing noise.

The victim left the apartment. He testified that he did not "grab" back his money because he was "grateful" not to be arrested. He also was "afraid" because he did not know if other people might be in the apartment and was concerned by "the possibility of physical harm" if appellant in fact was not a police officer. He did not want to "agitate the situation at that time," but he later concluded that appellant's "story doesn't make sense" and began texting her, challenging whether she was "a cop." Appellant offered to return the victim's money, but when he returned to her apartment, as she instructed, she refused to acknowledge him and ultimately called the police. When the officers arrived, however, she refused to answer the door and also did not answer calls to her cell phone. She falsely reported a stabbing at a nearby gas station to divert the officers' attention away from her apartment.

Appellant testified at trial, giving a different account of events. She claimed that she had agreed to go for drinks with the victim "[b]ecause he wanted somebody to talk to" and that she told him she charged $250 per hour to "hang out." She said that after he arrived at her apartment, they sat on the sofa and talked for a while, but when she told him that they needed to leave the apartment, he became agitated and aggressive. According to appellant, the victim said, "I've got your donation for you" and handed her a bank envelope with her screen name on it. She acknowledged telling the victim that he was going to jail for "soliciting prostitution." She said that he called and texted her repeatedly after he left the apartment and that she called the police when he returned.

ANALYSIS

When reviewing a challenge to the sufficiency of the evidence, the judgment of the trial court is presumed correct; we may set the judgment aside only if it "is plainly wrong or without evidence to support it." Code § 8.01-680; Pijor v. Commonwealth, 294 Va. 502, 512 (2017). Given that presumption, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).

The Commonwealth concedes that the evidence was insufficient to prove extortion because the victim paid appellant the agreed fee for her services before she made any threat. We view the Commonwealth's concession as a mixed question of fact and law. See Overbey v. Commonwealth, 65 Va. App. 636, 655 n.4 (2015). "A party can concede the facts but cannot concede the law." Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*) (quoting Cofield v. Nuckles, 239 Va. 186, 194 (1990)). "Because the law applies to all alike, it cannot be subordinated to the private opinions of litigants." Id. The Commonwealth's concession of legal error is "entitled to great weight," but does not relieve this Court of its responsibility to review *de novo* the applicable legal principles. Joseph v. Commonwealth, 64 Va. App. 332, 336 n.2 (2015); see Logan, 47 Va. App. at 172.

Code § 18.2-59 states in pertinent part:

> Any person who (i) threatens injury to the character, person, or property of another person, [or] (ii) accuses him of any offense, . . . and thereby extorts money, property, or pecuniary benefit or any note, bond, or other evidence of debt from him or any other person, is guilty of a Class 5 felony.

See Wood v. Commonwealth, 8 Va. App. 560, 562 (1989) (holding that the statutory offense of extortion "consists of a threat or accusation coupled with an extortion of money or other benefit").

This Court has held that the term "extort" means: "To gain by wrongful methods; to obtain in an unlawful manner, as to compel payments by means of threats of injury to person, property, or reputation. To exact something wrongfully by threats or putting in fear." Stein v. Commonwealth, 12 Va. App. 65, 69 (1991) (quoting Extort, Black's Law Dictionary (6th ed. 1990)). And: "To obtain from a person by force or undue or illegal power or ingenuity." Id. (quoting Webster's Collegiate Dictionary 406 (1977 ed.)). "The term imports elements of wrongfulness and coercion." Id. at 70. "[T]he gravamen of extortion is wrongfully obtaining a benefit through coercion." Strohecker v. Commonwealth, 23 Va. App. 242, 257 (1996).

Here, the victim testified that he intended to pay appellant the agreed sum of money for her services when he went to her apartment and had the cash in an envelope with her name on it in his wallet. The victim did not object when appellant requested payment before she provided any services and willingly opened his wallet to display an envelope marked "Layla." That appellant immediately took the envelope from his wallet is of little significance. Appellant did not threaten the victim or accuse him of any crime before she took the envelope. She told him that he was under arrest for solicitation and that she would release him if he gave her a satisfactory reason to do so, but she did not demand that he give her any additional money or property as a condition of his release.[3] Appellant's conduct, while despicable, did not rise to extortion as a matter of law. See Wood, 8 Va. App. at 562-63 (affirming defendant's extortion

---

[3] Although appellant did not return the victim's money, the jury found her not guilty of grand larceny.

conviction where the evidence showed that defendant threatened to claim the victim had raped her if he did not give her $700 to pay her boyfriend's bail).

CONCLUSION

The evidence established that the victim voluntarily agreed to pay appellant $260 for an hour of her time and willingly opened his wallet to pay her before appellant made any threat or accusation. We find that the evidence was insufficient as a matter of law to sustain the extortion conviction. We reverse the conviction and dismiss the indictment.

<u>Reversed and dismissed.</u>