**Alexandria**

DANIEL D. STEIN

v.

COMMONWEALTH OF VIRGINIA

No. 0455-89-4

Decided March 12, 1991

COUNSEL

Stanley P. Klein (Klein & Greenspun, on briefs), for appellant.

John H. McLees, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—Daniel D. Stein was convicted in a jury trial of attempting to extort money or pecuniary benefit in violation of Code § 18.2-59. On appeal, he contends that the trial court erred (1) in denying his motion to set aside the jury verdict and to dismiss the indictment against him on the ground that Code § 18.2-59 is unconstitutional, either on its face or as applied to him, (2) in denying his motion to strike the Commonwealth's evidence on the ground of insufficiency of the evidence, (3) in granting jury instruction No. 1, (4) in failing to instruct the jury on a "claim of right" defense, and (5) in excluding evidence relating to his discussions with two attorneys in his office about the contents of Commonwealth's exhibits 1 and 2. We find no error and affirm.

In September, 1986 the appellant's wife began employment at the Fairfax County Office for Children (OFC). Initially, she enjoyed a close personal and professional relationship with her immediate supervisor. During that time, the supervisor disclosed to Mrs. Stein various personal matters, including the fact that the supervisor had engaged in a sadomasochistic sexual relationship with her second husband. In the spring of 1987, Mrs. Stein and the supervisor had a heated argument. Thereafter, their relationship deteriorated, and in November 1987 Mrs. Stein's employment at OFC was terminated.

Mrs. Stein appealed her dismissal. The appellant, who has legal training, undertook to assist her. He obtained a copy of the personnel regulations of Fairfax County and initiated the appeal process, first to the Director of the Personnel Office, then to the Civil

Service Commission. Dissatisfied with the proceedings before these agencies, appellant wrote a letter of complaint to the Chairman of the Fairfax County Board of Supervisors. He found her reply unresponsive.

On June 8, 1988 appellant sent to Bob Ross, the assistant county attorney representing the county with respect to Mrs. Stein's claim, the following handwritten note, received as Commonwealth's Exhibit No. 1:

> Before this letter goes out, I suggest we discuss a possible settlement. *I do not believe the Office for Children would like to see the information on p. 3 re (name deleted from court exhibit)'s deviant behavior go public.* Further, I do not believe the Office for Children would like to see 5,000 copies of the *flyer distributed at the Fairfax Fair.*[1]

In response to a telephone call from Mr. Ross asking what he had in mind as a settlement, appellant submitted to him a written statement of "proposed settlement terms."[2]

---

[1] Attached to the note was a four page draft of a letter addressed to the Chairman of the Board of Supervisors, with copies to the other members of the Board, to various county officers, and to four people designated as representing newspapers. This letter described Mrs. Stein's case, referred to false and threatening information given by representatives of the OFC (whose names were deleted from the exhibit), described the confession of sadomasochistic behavior by Mrs. Stein's supervisor, and referred to the assessment of that supervisor's psychological condition by two clinical psychologists with whom the Steins had discussed the case. Also attached to the note was a copy of a flyer cautioning parents that a supervisor at the OFC had admitted engaging in sadomasochistic behavior.

[2]                    PROPOSED SETTLEMENT TERMS

1. A statement from Ms. Rosen, Director of the Office for Children, to be entered as evidence in the official record of the appeal: (1) stating that improper consideration of non-merit factors resulted in Ms. Stein's non-selection for the position of Day Care Teacher II and her termination from her temporary position with the Office for Children; (2) disavowing the contents of Ms. Rosen's Memo of December 30 to the Personnel Office; (3) disavowing the contents of Ms. Owens' "personal notes" relating to Ms. Stein's performance; (4) disavowing the notes made by Ms. Owens during and after Ms. Stein's interview for the permanent position and the contents of the interview rating sheet prepared by Ms. Owens; and (5) acknowledging that Ms. Stein's rights were violated by the failure to provide her a written performance evaluation, a position description and performance standards.

2. A separate statement from Ms. Rosen, to be entered into Ms. Stein's personnel file, stating that Ms. Stein executed her overall job responsibilities in a professional manner and that her performance at the Child Care Training Site was exemplary. Agreement by the County that this statement and this statement alone shall be provided in response to any

On June 10 appellant sent Mr. Ross the following note:

Here's another newspaper that would be interested in knowing about (name deleted from exhibit) behavior.

On the same date, appellant sent Mr. Ross the following note:

Just became aware of the Fairfax Journal article of 6/9/88 on the Head Start/Office for Children. I am sure the Head Start advocates also would be interested in how the Office for Children is run.

## THE CONSTITUTIONALITY OF CODE § 18.2-59

Code § 18.2-59 provides:

If any person threaten injury to the character, person, or property of another person or accuse him of any offense and thereby extort money, property, or pecuniary benefit or any note, bond, or other evidence of debt from him or any other person, he shall be guilty of a Class 5 felony.

■ Appellant first contends that Code § 18.2-59 is unconstitutionally vague. The grounds for determining vagueness were set forth in *Grayned v. City of Rockford*, 408 U.S. 104 (1972).

---

request for an evaluation of Ms. Stein's job performance. Agreement by the County that, with the exception of this statement, no other documents related to this appeal be placed in Ms. Stein's personnel file.

3. The opportunity for Ms. Stein to enter into evidence in the official record of the appeal a statement setting forth her position regarding this case (excluding any comments on Ms. Owens' deviant sexual behavior.)

4. Damages in the amount of $5000 to reimburse the Steins for out-of-pocket expenses related to the appeal and loss of income due to Ms. Stein's termination. (This is less than one-half of her actual loss of income.)

5. A waiver by the Steins and the County of any right to any further legal action, civil or otherwise, based on Ms. Stein's non-selection and termination.

6. Agreement by the Steins and the County not to publicize this matter in any way by means of public written communications.

7. Agreement that the official record pertaining to the appeal not be made available to the public.

> [W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Id.* at 108-09. If the terms of the statute, when measured by common understanding and practices, sufficiently warn a person as to what behavior is prohibited, then the statute is not unconstitutionally vague. *Walker v. Dillard*, 363 F. Supp. 921 (W.D. Va. 1973), *rev'd on other grounds*, 523 F.2d 3 (4th Cir.), *cert. denied*, 423 U.S. 906 (1975).

■ Appellant contends that the words "threat," "character," "pecuniary benefit," and "extort" are not defined in the statute or by case law and are unconstitutionally vague. We disagree. It is a basic rule of statutory construction that a word in a statute is to be given its everyday, ordinary meaning unless the word is a word of art. *Lovisi v. Commonwealth*, 212 Va. 848, 850, 188 S.E.2d 206, 208, *cert. denied*, 407 U.S. 922 (1972). The words "threat," "character," and "pecuniary benefit" are all ordinary, everyday words whose meanings are plain to a person of normal intelligence and education. Furthermore, the trial court defined "pecuniary benefit" in a jury instruction as "benefits that can be valued in money," and this definition was accepted by the defendant without objection.

■ "Extort" has an established and well recognized meaning. *Black's Law Dictionary* (6th ed. 1990) defines it, within the context of this case, as follows:

> To gain by wrongful methods; to obtain in an unlawful manner, as to compel payments by means of threats of injury to person, property, or reputation. To exact something wrongfully by threats or putting in fear.

*Id.* at 525. *Webster's Collegiate Dictionary* (1977) defines "extort" as follows:

> To obtain from a person by force or undue or illegal power or ingenuity.

*Id.* at 406. The concept and proscription of extortion have long existed in the law of this Commonwealth. *See Mitchell v. Commonwealth*, 75 Va. 856 (1880). They have been found in the Virginia Code since 1849 and have remained virtually unchanged since that time. The Virginia Codes of 1849, 1860, 1873, 1887, 1942 and current Code § 18.2-59 describe extortion as: "If any person threaten injury to the character, person, or property of another person or to accuse him of any offense and thereby extort money or pecuniary benefit, he shall be confined. . . ." In *Hometowne Builders Inc. v. Atlantic National Bank*, "extort" was defined as an "[u]nlawful obtaining of money from another." 477 F. Supp. 717, 721 n.2 (E.D. Va. 1979). The term imports elements of wrongfulness and coercion. Code § 18.2-59 is not vague. It is facially constitutional.

■ The appellant next contends that Code § 18.2-59 is unconstitutional as to him in that it is overbroad and impinges upon his First Amendment right to free speech. We reject this argument. The focus of the statute is the prohibition of extortion. As Justice Holmes once said, "the First Amendment while prohibiting legislation against free speech as such cannot have been, and obviously was not, intended to give immunity for every possible use of language." *Frohwerk v. United States*, 249 U.S. 204, 206 (1919); *see Moore v. Newell*, 401 F. Supp. 1018, 1021 (E.D. Tenn. 1975), *aff'd*, 548 F.2d 671, 672 (6th Cir. 1977); *Carricarte v. State*, 384 So. 2d 1261, 1262-63 (Fla.), *cert. denied*, 449 U.S. 874 (1980). Code § 18.2-59 does not act to limit or punish speech. It proscribes only the act of employing speech for extortionate purposes.

In support of his overbreadth argument, appellant relies on *State v. Robertson*, 293 Or. 402, 649 P.2d 569 (1982), holding Oregon's coercion statute to be unconstitutionally overbroad. The Oregon statute bore little essential resemblance to Code § 18.2-59. The Oregon statute was not tied to extortion, but rather proscribed the utilization of coercive methods, including speech, whereby the actor "compels or induces another person to engage in conduct from which he has a legal right to abstain, or to abstain from engaging in conduct in which he has a legal right to engage. . . ." *Id.* at 413, 649 P.2d at 577. Noting that the coercive objectives embraced by the statute were not limited by any concept of wrongfulness, or of deprivation of property, or of private dealings between citizens, but rather embraced the public

sphere and areas of legitimate persuasion, the Oregon court held that it impinged upon freedom of speech. In so holding, the court noted:

> The classic form of protection against being compelled by threats to give up what one is under no obligation to yield is found in the long-established laws against blackmail or similar forms of extortion. On historic grounds alone, we have no doubt that these or their contemporary equivalents survived the proscription of speech-restraining laws in article I, section 8 (Oregon Constitution). A central characteristic of these classic crimes, however, was that the unlawful threats were used to obtain money or other things of value.

*Id.* at 421, 649 P.2d at 581. This comment is equally applicable to Code § 18.2-59.

## SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence taken in the light most favorable to the Commonwealth was insufficient to support a finding that he was guilty of attempted extortion, and that the trial court erred in denying his motion to strike the evidence. He argues that it was an element of the crime of extortion, as applied to this case, that his conduct was for the purpose of acquiring property or rights to which he or his wife were not entitled. He argues that the evidence shows that he sought only what was due his wife, the expungement of wrongful accusations made against her, an apology, and reimbursement for her claimed expenses. We do not accept this argument. The alleged "settlement" proposed by the appellant did not offer the surrender by him or his wife of anything belonging to or claimed by them, but proposed only their abstention from attempting to inflict injury on the OFC and its employee. What the appellant sought through this "settlement" was not the securing to his wife of something that was agreed to be hers. Rather, he sought to employ coercion as the alternative to voluntary negotiation or lawful resolution. Such conduct is extortionate.

## INSTRUCTIONS

Appellant complains of the granting of instruction No. 1. Our review of the record reveals that he agreed to the giving of this instruction. Indeed, he proposed another similar to it which he

withdrew to avoid duplication. He argues that the trial court erred in failing to grant a "claim of right" instruction. He did not propose such an instruction and never laid before the trial court the question of whether such an instruction should be given. We will not entertain his arguments concerning instructions for the first time on appeal. Rule 5A:18.

## LIMITATION OF EVIDENCE

At trial, the appellant testified that prior to sending his note of June 8, 1988 and its accompanying documents, he discussed the matter with two attorneys in the office where he worked. The trial court permitted this testimony, but on prophylactic objection by the Commonwealth's Attorney, ruled that appellant could not testify as to what those attorneys said to him. Counsel for appellant accepted this ruling, noted no objection, and sought to ask no further questions. Appellant now contends that the trial court improperly limited his testimony. This position was not timely submitted to the trial court and will not be considered by us for the first time on appeal. Rule 5A:18.

The judgment of the trial court is affirmed.

*Affirmed.*

Duff, J., and Keenan, J., concurred.