# CIRCUIT COURT OF THE CITY OF WINCHESTER

Commonwealth of Virginia

v.

Thomas J. Dick

December 3, 1998

Case Nos. (Criminal) 98-405 and 98-406

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Defendant's motion to suppress and to dismiss charges of drunk in public and of resisting the arrest for being drunk in public. Evidence was previously taken, and the parties have filed memoranda of authorities, which have been considered by the Court. Upon consideration whereof, the Court has made the following decision to grant the motion to dismiss.

## I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

On June 6, 1998, at approximately 1:30 a.m., Officers Hyde and King of the Winchester Police Department were working a traffic stop on South Loudoun Street in Winchester. Officer Hyde had been employed with the Winchester Police Department for approximately six months, and Officer King was her field training officer on that shift.

After completing the traffic stop, Officer King pointed out to Officer Hyde the Defendant, who was walking on the opposite side of South Loudoun Street in the direction of the officers. Officer Hyde observed the Defendant walking on the sidewalk, and she said that he was "staggering" from side to side on the sidewalk, which was brick and was uneven.

Officers King and Hyde approached the Defendant and asked if he had been drinking. Officer Hyde could not recall the Defendant's response. Officer King recalled that the Defendant said that he had been drinking. According to Officer Hyde, the Defendant's speech was slightly slurred. Officer Hyde also detected an odor of alcohol about the Defendant's person. She then advised the Defendant that he was under arrest. As she attempted to place handcuffs on him, the Defendant pulled his hand away, said "Oh no I'm not." As the Defendant pulled his arm away, he fell to the sidewalk, where he was restrained and handcuffed by the officers.

The City of Winchester operates a certified detoxification unit within the city limits known as the Starting Point Detoxification Center. According to John Foreman, Director of Starting Point, persons sent to the detox center are usually not charged on either a summons or warrant with the offense of being drunk in public, but rather they stay at the detox center for up to six hours until they are sober enough to leave the unit, and they are then discharged. The persons who remain at the detox center are not subsequently prosecuted criminally for being drunk in public. If a person is very drunk, above a .30, the jail will not take them, and such very drunk persons are also taken to the detox center. These procedures were in place on June 6, 1998.

The offense of being intoxicated in public is a Class 4 misdemeanor punishable by a fine of not more than $250.00. An individual taken to the Starting Point Detoxification Center in lieu of arrest is not charged with the criminal offense of being intoxicated in public and does not face criminal prosecution for that offense in the overwhelming majority of cases.

General Order 507 of the Winchester Police Department, which was in force at the time of the Defendant's arrest, provides that "[p]rior to making an arrest for public drunkenness under Chapter 14-10 of the City Code or § 18.2-388 of the State Code, the officer will inform all eligible individuals that they may, instead of arrest, choose to participate in the Detoxification Program." General Order 507 further sets forth the eligibility criteria for participation in the Detoxification Program. The Defendant in this case met all of the eligibility requirements for participation in the Detoxification Center Program on June 6, 1998.

Prior to placing the Defendant under arrest on June 6, 1998, neither Officer Hyde nor Officer King advised the Defendant that he had the option of going to the Starting Point Detoxification Center in lieu of arrest.

The Winchester Police Department maintains statistics for the number of persons arrested each year for the offense of being drunk in public and the number of persons taken to the Starting Point Detoxification Center in lieu of arrest. For the years 1996, 1997, and 1998, those numbers are as follows:

|  | DIP/Arrest | Detox |
|---|---|---|
| 1996 | 132 | 1,466 |
| 1997 | 216 | 1,787 |
| 1998 (through 9/30/98) | 215 | 1,351 |
| 1998 (extrapolated) | 286 | 1,753 |

Dealing with drunks is difficult, and both the police records and the events of June 6, 1998, show that it is a pandemic problem which the police encounter daily.

In the 45 minutes prior to the arrest of the Defendant on June 6, 1998, two other individuals were transported to the Starting Point Detoxification Center in lieu of arrest. One individual was transported by Officers Hyde and King at approximately 12:53 a.m. The second individual was transported by Officer Ellinger at approximately 1:21 a.m. Officers King and Hyde participated in the encounter with this second individual.

## II. *Conclusions of Law*

Society has wrestled for centuries with the problem of excessive drinking. "It is the wise man who stays home when he is drunk." Euripides, *The Cyclops*. "Wine is an insolent fellow, and strong drink makes an uproar; no one addicted to their company grows wise." Proverbs 20:1. As the old adage aptly notes, the effect of alcohol consumption is both cumulative and insidious: "First the man takes a drink, then the drink takes a drink, and then the drink takes the man." The societal response to problem drinking has ranged from admonition to prohibition.

This country and our state have tried both complete prohibition and criminalization of public acts associated with alcohol consumption. More recently, the trend of the criminal justice system's response has been toward rehabilitation as opposed to criminalization. *See* Merrill, *Drunkenness and Reform of the Criminal Law*, 54 VA. LAW REV. 1135 (1968). Virginia Code § 18.2-388 represents the current balance struck between criminalization and rehabilitation in the treatment of the public inebriate, and it provides as follows:

> If any person profanely curses or swears or is intoxicated in public, whether such intoxication results from alcohol, narcotic drug or other intoxicant or drug of whatever nature, he shall be deemed guilty of a

Class 4 misdemeanor. In any area in which there is located a court-approved detoxification center a law-enforcement officer may authorize the transportation, by police or otherwise, of public inebriates to such detoxification center in lieu of arrest; however, no person shall be involuntarily detained in such center.

In 1982, § 18.2-266 was amended to provide for "transportation, by police or otherwise, of public inebriates to such detoxification center *in lieu of arrest*." Acts of Assembly 1982, ch. 666. Implicit in this statutory scheme is the legislative recognition that "one for the walk" should be treated differently and more leniently than "one for the road." Such statutory diversion programs are now common in cases involving drug and alcohol abuse. *See, e.g.* Virginia Code § 18.2-251 (first offender drug statute).

Consonant with the statutory amendment providing for transportation to the detox center *in lieu of arrest*, the Winchester City Police Department promulgated General Order 507, which specifies the objective procedure by which officers are to handle public inebriates. The Order specifically provides that:

The diversion of public inebriates from the criminal justice system is intended to reduce the use of criminal justice resources and to assist individuals in receiving needed services. *Prior to making an arrest for public drunkenness* under chapter 14-10 of the City Code or Section 18.2-388 of the State Code, *the officer will inform all eligible individuals that they may, instead of arrest, choose to participate in the detoxification program.* [Emphasis added.]

This order is salutary in nature and in keeping with both the spirit and the letter of § 18.2-388. The order limits the discretion of police officers by requiring that an individual eligible for participation in the detoxification program be advised of his detox option *prior* to his arrest.

The defendant was eligible for participation in the detox program. Two other individuals were transported to the Starting Point Detoxification Center in lieu of arrest in the forty-five minutes immediately preceding the defendant's arrest. One of these individuals was transported to the detox center by Officers King and Hyde. The officers in this case failed to advise the Defendant of his option to participate in the detoxification program. Accordingly, the Defendant was denied the right to opt out of the criminal justice system and into the detox center, as contemplated by the statute.

The Defendant challenges the constitutional validity of § 18.2-388, claiming that it is void for vagueness. In *Commonwealth v. Carter*, 21 Va. App. 150, 153-54, 462 S.E.2d 582 (1995), the Court of Appeals reviewed the legal principles governing a court's assessment of the constitutional validity of a statute:

> "In assessing the constitutionality of a statute, [a court] must presume that the legislative action is valid." *Perkins v. Commonwealth*, 12 Va. App. 7, 14, 402 S.E.2d 229, 233 (1991). "Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning ... ." *Woolfolk v. Commonwealth*, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994). "If a statute can be made constitutionally definite by a reasonable construction, the court is under duty to give it that construction." *Perkins*, 12 Va. App. at 14, 402 S.E.2d at 233 (quoting *Pederson v. City of Richmond*, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979)). When, as here, a statutory challenge does not implicate a constitutionally protected right, the "narrow question is whether [the legislation] is vague as applied to the defendant[s'] conduct ... ." *Woodfin v. Commonwealth*, 236 Va. 89, 92, 372 S.E.2d 377, 379 (1988), cert. denied, 490 U.S. 1009 (1989). "The burden is on the challenger to prove the alleged constitutional defect." *Perkins*, 12 Va. at 14, 402 S.E.2d at 233.
>
> In undertaking a void-for-vagueness analysis, [courts] are guided by a well established two-prong test. First, a penal statute, "when measured by common understanding and practices," must define the proscribed conduct with sufficient particularity to "warn a person as to what behavior is prohibited ... ." *Stein v.* Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991). Secondly, the statutory language must not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974). This second prong recognizes "the requirement that a legislature establish minimal guidelines to govern law enforcement" and has been described as "the more important aspect of [the] vagueness doctrine." *Kolender*, 461 U.S. at 358 (citation omitted). It forbids the impermissible delegation of "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant danger of arbitrary and discriminatory applications." *Stein*, 12 Va. App. at 69,

402 S.E.2d at 240-41 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

The Defendant complains about the lack of an objective definition of "intoxicated" in the statute. However, the courts apply an objective definition of intoxicated in the context of criminal prosecutions. In *Leake v. Commonwealth*, 27 Va. App. 101, 109-10, 497 S.E.2d 522 (1998) (driving under the influence), the Court of Appeals stated:

> Because the Commonwealth offered no chemical test of Leake's blood or breath, the issue of Leake's intoxication had "to be determined from all of the evidence of his condition at the time of the alleged offense." *Brooks v. City of Newport News*, 224 Va. 311, 315, 295 S.E.2d 801, 804 (1982). In considering the totality of the circumstances surrounding his condition, the Court may be guided by the statutory definition of intoxication. *See id.* at 316, 295 S.E.2d at 804." 'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." Code § 4.1-100.

This "observably affect" test is objective, and it is the one which courts apply to drunk in public cases. *See, e.g. Baldwin v. Commonwealth*, 243 Va. 191, 194, 413 S.E.2d 645 (1992). It necessarily entails a consideration of the defendant's overall conduct and appearance. Section 18.2-388 is not void for vagueness, rather the issue in this case is whether the manner in which it was applied transgressed the constitutional boundaries of permissible criminal law enforcement.

"An individual's right to equal protection, it has been held as a general principle, may be violated by discriminatory administration of a law that is impartial on its face." 21A Am. Jur. 2d, *Criminal Law*, § 833. "The issue is not discretion versus no discretion, but rather how discretion should be confined, structured, and checked." LaFave and Israel, *Criminal Procedure*, § 13.2(d), 2d ed. 1992. Generally, both the discretion to prosecute and the discretion to divert should be exercised according to established standards and procedures. *Id.* §§ 13.2(f) and 13.6. In the sobriety checkpoint cases, the Supreme Court has recognized the danger of unfettered police discretion and stated that: "In order to ensure that 'an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field ... [seizures at roadblocks] must be carried out pursuant

to a plan embodying explicit, neutral limitations on the conduct of individual officers'." *Crandol v. Newport News*, 238 Va. 697, 700, 386 S.E.2d 113, 114 (1989) (quoting *Lowe v. Commonwealth*, 230 Va. 346, 350, 337 S.E.2d 273, 276 (1985), *cert. denied*, 475 U.S. 1084, 89 L. Ed. 2d 720, 106 S. Ct. 1464 (1986)). In this case the "plan embodying explicit, neutral limitations on the conduct of individual officers" was Winchester Police Department General Order 507, and it was not followed.

Section 18.2-388 of the Virginia Code does give the police some discretion in affecting arrests for the offense of being drunk in public or transporting individuals to a detoxification center in lieu of arrest. Most individuals opt for the detoxification program which is an opt out of the criminal justice system, and this dichotomy in result is one which the General Assembly contemplated. So long as the procedure specified in Winchester General Order 507 is followed, the procedure is constitutionally permitted.

Through September 30, 1998, 1,351 persons were apparently advised of their right to enter the detox program and made that wise election. The Defendant in this case was treated differently than the vast majority of other persons similarly situated, in that he was never afforded the option of detox prior to his arrest, and no satisfactory reason has been proven or proffered as to why he was not advised of this right.

Because the statute under the circumstances of this case was administered contrary to General Order 507, it resulted in arbitrary and discriminatory enforcement of § 18.2-388. Consequently, the Defendant's arrest for being intoxicated in public does not pass constitutional muster and was unlawful. In Virginia, a person has the right to resist an unlawful arrest. *Brown v. Commonwealth*, Record No. 2917-96-3 (Va. App. April 7, 1998); *Foote v. Commonwealth*, 11 Va. App. 61 (1990). In this case the failure to advise the Defendant of his right to opt for the detox center in lieu of arrest is fatal to the Commonwealth's prosecution. Accordingly, both charges against the defendant must be dismissed.

### III. *Decision*

Upon consideration whereof, it is adjudged and ordered that the Defendant's Motion to Dismiss is granted and these two cases are dismissed with prejudice.