Tuesday          20th

March, 2001.


Lavonnia Nicole Tate,                                    Appellant,

 against       Record No. 0042-99-2
               Circuit Court No. 98-1398-F

Commonwealth of Virginia,                                Appellee.


Upon a Rehearing En Banc

  Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
 Bray Annunziata, Bumgardner, Frank, Humphreys, Clements and Agee

              Gregory W. Franklin, Assistant Public
              Defender, for appellant.

              Shelly R. James, Assistant Attorney
              General (Mark L. Earley, Attorney
              General, on brief), for appellee.

        By unpublished opinion dated July 18, 2000, a divided

panel of this Court affirmed the judgment of the trial court.

We stayed the mandate of that decision and granted rehearing en

banc.

        Upon rehearing en banc, it is ordered that the stay of

this Court's July 18, 2000 mandate is lifted, and the judgment

of the trial court is affirmed for the reasons set forth in that

portion of the majority opinion under "B.  Intent."

        Judges Benton and Elder dissent for the reasons set

forth in the panel opinion's dissent.

Appellant further contended the injuries inflicted upon the child did not constitute "serious injury" under Code § 18.2-371.1(A). Because appellant failed to preserve this argument, this issue is barred on appeal. See Rule 5A:18.

While appellant, in her motion to strike at the conclusion of the Commonwealth's evidence, challenged the sufficiency of the evidence by arguing the Commonwealth had not proven "serious injury," she did not renew that argument in her motion to strike at the conclusion of all the evidence.

Under Rule 5A:18, in order to preserve the question of the sufficiency of the evidence, the appellant must, at a minimum, make a timely motion to strike the evidence at the conclusion of the appellant's evidence, or, in a bench trial, present an appropriate argument in summation, or make a motion to set aside the verdict. See Parnell v. Commonwealth, 15 Va. App. 342, 349, 423, S.E.2d 834, 838-39 (1992); Fortune v. Commonwealth, 14 Va. App. 225, 228, 416 S.E.2d 25, 27 (1992); Campbell v. Commonwealth, 12 Va. App. 476, 479-81, 405 S.E.2d 1, 1-3 (1991) (en banc).

Moreover, the record reflects no reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

Judge Benton would hold that at the conclusion of all the evidence appellant's trial counsel adopted the arguments he

made in the motion to strike the Commonwealth's evidence and, thus, preserved this issue.

The Commonwealth shall recover of the appellant the costs in this Court, which costs shall include an additional fee of $200 for services rendered by the Public Defender on the rehearing portion of this appeal, in addition to counsel's necessary direct out-of-pocket expenses, and the costs in the trial court.  This amount shall be added to the costs due the Commonwealth in the July 18, 2000 mandate.

This order shall be certified to the trial court.


A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

- 3 -

Present:  Judges Benton, Coleman and Lemons*
Argued at Richmond, Virginia


LAVONNIA NICOLE TATE

                                    MEMORANDUM OPINION** BY
v.    Record No. 0042-99-2         JUDGE SAM W. COLEMAN III
                                          JULY 18, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        James B. Wilkinson, Judge

              Gregory W. Franklin, Assistant Public
              Defender (David J. Johnson, Public Defender,
              on brief), for appellant.

              Shelly R. James, Assistant Attorney General
              (Mark L. Earley, Attorney General, on brief),
              for appellee.


     Lavonnia Nicole Tate was convicted in a bench trial of child

neglect, a Class 4 felony, in violation of Code § 18.2-371.1(A).[1]

---

* Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

** Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

[1] Code § 18.2-371.1 provides:

              A.  Any parent, guardian, or other
              person responsible for the care of
              a child under the age of eighteen
              who by willful act or omission or
              refusal to provide any necessary
              care for the child's health causes
              or permits serious injury to the

On appeal she argues that the injuries her child sustained were not serious injuries as defined by Code § 18.2-371.1(A) and that the evidence is insufficient to prove that a willful act, omission, or refusal to provide necessary care by her caused or permitted serious injury to the child.  We disagree and affirm the conviction.

I.   BACKGROUND

life or health of such child shall be guilty of a Class 4 felony. For purposes of this subsection, "serious injury" shall include but not be limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, or (vii) life-threatening internal injuries.
B.  Any parent, guardian, or other person responsible for the care of a child under the age of eighteen whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.
C.  Any parent, guardian or other person having care, custody, or control of a minor child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination shall not, for that reason alone, be considered in violation of this section.

Viewed in the light most favorable to the Commonwealth, the evidence established that on August 15, 1997, Lavonnia Tate left her eighteen-month-old daughter in the care of her boyfriend, Jawan Brown, while she was at work. Tate testified that she instructed Brown to take the child to the babysitter. Later that day, when Brown returned with the child to pick Tate up from work, she discovered that he had not taken the child to the babysitter. Tate also observed several scratches on the child's face and a "mark" on the child's lip. Brown told Tate that the child was injured "when she fell running down the sidewalk."

On the following Monday, August 18, 1997, Tate again entrusted her child to Brown while she worked, with the understanding that Brown would take the child to the babysitter. Later that day when Brown returned the child, Tate observed a large bruise on the child's forehead and several bruises and scratches on the child's body. When Tate asked Brown what had happened, he responded that he was not going to be responsible for someone else's child.

Tate testified that she felt that she should have sought emergency medical treatment for the child's injuries and she felt she could not provide the necessary care and treatment for the child's injuries. She stated, however, that she did not seek treatment because she was frightened that others would think she had inflicted the injuries on the child. Tate also testified that

she would not permit the child's father, James Brown, to see the child on August 18 because she was fearful that he would think she injured the child.

On August 18, James Brown went to Tate's residence to visit his daughter. After Tate refused to permit James Brown to see the child, he became suspicious that the child might be hurt and called the police. A Richmond police officer arrived at Tate's residence, and, after seeing the child, took the child to the hospital for examination and treatment. The child appeared to be lethargic and in need of medical care.

Dr. Thomas Young examined the child on August 19, 1997. He testified that the child had numerous bruises of various ages to her body. The child also had numerous "small lacerations on her face and numerous bruises on her legs." She had a scab on her left shoulder, which Dr. Young testified was "interesting in shape in that it was two linear lines," and she had a bruise on her right thigh in the shape of a thumbprint. The child also had "reddish bruises on her forehead" and a "large flat dark brown bruise on her forehead." Dr. Young testified that based on the color of the bruises, he could determine the age of the bruise. He stated that when a bruise first occurs, it is "a scarlet red, purple color," and after a couple of days, "the bruise darkens into a darker brown color and then with time over a couple of days

it kind of lightens up into a yellowish/green color, and finally to a tan color."

Dr. Robin Foster testified that a review of a CT scan of the child's brain performed on August 19 indicated "areas of petechial hemorrhages, which basically means tiny little spots of bleeding throughout the brain tissue, and an area of bruising on the right occiput of the head, which is the back of the brain on the right-hand side." Dr. Foster further testified that a MRI performed on August 21 indicated that the bleeding in the brain had occurred within three or four days of the MRI test. The injuries were indicative of brain trauma, but they were not life threatening. The other tests that were conducted showed no evidence of any bone fractures and the retinal examination showed no hemorrhages, which is a common injury with acceleration and deceleration trauma.

In finding Tate guilty of the Class 4 felony by violating Code § 18.2-371.1(A), the trial judge made two separate findings as the basis for the conviction. The trial judge found that Tate violated the statute by "willful . . . omission or refusal to provide . . . necessary care for the child's health" and by negligently entrusting the child to Jawan Brown on the second occasion after knowing that the child had received extensive injuries when in Brown's care three days earlier, "permit[ing] serious injury to the life or health of [the] child."

## II. ANALYSIS

On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, the prevailing party, and grant to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).  The credibility of the witnesses and the weight accorded their testimony are matters solely within the province of the fact finder.  See Lane v. Commonwealth, 184 Va. 603, 610-11, 35 S.E.2d 749, 752 (1945).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citations omitted).

### A. Serious Injury

Tate argues that the injuries to the child did not constitute "serious injury" as contemplated by the statute.  We disagree. Code § 18.2-371.1(A) provides, that "'serious injury' shall include but not be limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, or (vii) life-threatening internal injuries."

- 9 -

In determining whether the child's injuries fall within the definition of "serious injury" proscribed by Code § 18.2-371.1(A), we apply the statutory construction principles of noscitur a sociis and ejusdem generis.  The principle of noscitur a sociis instructs that "the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context."  Turner v. Commonwealth, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983).  Similarly, the rule of ejusdem generis instructs that "when a particular class of persons or things is enumerated in a statute and general words follow, the general words are to be restricted in their meaning to a sense analogous to the less general, particular words."  Martin v. Commonwealth, 224 Va. 298, 301-02, 295 S.E.2d 890, 892-93 (1982) (citations omitted).

"It is a basic rule of statutory construction that a word in a statute is to be given its everyday, ordinary meaning unless the word is a word of art."  Stein v. Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991) (citations omitted).  Serious is defined as "grave in . . . appearance," "requiring considerable care."  Webster's Third New International Dictionary 2073 (1981); see generally Brewster v. Commonwealth, 23 Va. App. 354, 357, 477 S.E.2d 288, 289 (1996) (holding that the term "serious bodily injury" is not unconstitutionally vague); Commonwealth v. Hill, 196 Va. 18, 23, 82 S.E.2d 473, 476 (1954) (finding that in

defining "serious" under former Code § 46-420, the word should be given its ordinary meaning). Code § 18.2-371.1(A) provides a non-exhaustive list of examples of serious injuries. Although the injuries sustained by the child in this case are not specifically listed among the enumerated examples, from the evidence presented, the trial court did not err in concluding that the child's injuries were serious.

Here, the evidence proved that the eighteen-month-old child suffered from numerous bruises of various ages on her entire body. The child had a large bruise on her forehead that was several days old and numerous small bruises and lacerations on her face. She had a scab on her shoulder in the shape of two linear lines and a bruise in the shape of a thumbprint on her thigh. Dr. Young testified that he examined the child on August 19, 1997 and that the child's bruises varied in age from one or two days to five days old. A MRI showed scattered petechial hemorrhages throughout the child's brain that were approximately three to four days old. The child also had an area of bruising on the right occiput of the head. When the child was taken to the hospital, she appeared to be lethargic. The child's injuries, although not life threatening, were indicative of multiple and repetitive trauma.

Code § 18.2-371.1(A) does not limit "serious injury" to those injuries that are permanent or life threatening. An injury may be serious because of the nature and extent of the injury, the effect

- 11 -

the injury has upon the victim, or the extent to which the injury may require medical treatment. We conclude that the extent of the lacerations and bruises on the child's body and the sub-cranial bruising inflicted on this eighteen-month-old child over the course of several days, which apparently caused the child to be lethargic, supports the trial court's finding that the child sustained "serious injury." The injuries were extensive, in that there were numerous bruises and lacerations over a large part of her body; they were clearly visible; and they markedly affected the child's behavior, leaving her lethargic. The evidence is sufficient to support the trial court's finding that the child was seriously injured.

## B. Intent

Tate argues that the evidence is insufficient to prove that she, "by willful act or omission or refusal to provide any necessary care for the child's health," caused or permitted the serious injury to the child. Tate argues that the evidence failed to prove that she was aware that Jawan Brown would intentionally injure the child when she entrusted him with the child on the second occasion on August 18. Tate also argues that her decision not to seek medical care for the child's injuries on August 18 did not contribute, in any way, to the nature or seriousness of the child's injuries and that the failure to seek medical care did not cause or allow the injuries to worsen. She points out that other

than to examine the child and to determine the nature and extent of the injuries, no treatment for the injuries was prescribed or provided.

A person's intent may, and generally must, be shown by the circumstances, including a person's conduct and statements. See Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977); Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991). "[T]he reasonable inferences to be drawn from proven facts are within the province of the trier of fact." Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991) (citation omitted).

Although Tate conceded at trial she felt the child's injuries required or merited medical attention and she knew she could not provide adequate care for the child's injuries, she argues the lack of medical attention did not contribute to the seriousness of the child's injuries. The Commonwealth conceded at oral argument that the child's injuries did not become worse from the lack of medical care. Accordingly, we do not address that aspect of the defendant's argument that she violated the statute by failing to obtain necessary medical care. We address only whether Tate "by willful act or omission" caused or permitted serious injury to the child by entrusting care of the child to Jawan Brown on August 18.

We find the evidence to be sufficient to support the trial court's finding that Tate knew her child was at risk but, by

"omission or refusal" to act, allowed the abuse to continue by entrusting her child to Brown on August 18. On August 15, Tate observed extensive cuts and bruises on the child's face and body after she had been in Brown's care. The trial court was not plainly wrong in drawing the inference that Tate knew that the injuries were more than a child would receive in a minor fall. She made little or no inquiry from Brown and required little or no explanation from him concerning the injuries or why he had not taken the child to day care. Instead, she permitted Brown to care for her child on August 18, when the child sustained more injury to her entire body, including sub-cranial bruising to her head. See Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (noting that "willful" denotes an act that is intentional, knowing, or voluntary).

When Dr. Young questioned Tate about the numerous bruises, Tate stated she "did not know how that happened." Tate also denied "noticing any other bruises and would not offer an explanation for them" even though the bruises were readily visible and were several days old. Although Tate testified that she instructed Brown to take the child to day care on August 18, she was aware that he had failed to do so on August 15 as instructed, and she was aware that the child had suffered extensive injuries on that day while in his care. Inaction, when action was necessary to protect the health and well-being of her child, was

- 14 -

culpable.  The fact finder reasonably could have inferred from the child's extensive visible injuries on August 15, that Tate willfully permitted her child to be in danger of serious injury by allowing Brown to care for the child on August 18.  Accordingly, the evidence is sufficient to support the trial court's finding that, by allowing Jawan Brown to care for the child on the second occasion, Tate willfully permitted serious injury to the child's health.

Accordingly, we affirm the conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

Code § 18.2-371.1(A) provides as follows:

> Any parent, guardian, or other
> person responsible for the care of
> a child under the age of eighteen
> who by willful act or omission or
> refusal to provide any necessary
> care for the child's health causes
> or permits serious injury to the
> life or health of such child shall
> be guilty of a Class 4 felony.
> For purposes of this subsection,
> "serious injury" shall include but
> not be limited to (i)
> disfigurement, (ii) a fracture,
> (iii) a severe burn or laceration,
> (iv) mutilation, (v) maiming, (vi)
> forced ingestion of dangerous
> substances, or (vii) life-
> threatening internal injuries.

To sustain a conviction under Code § 18.2-371.1, the evidence must prove beyond a reasonable doubt that Lavonnia Nicole Tate, "by willful act or omission or refusal to provide any necessary care for the child's health," caused or permitted serious injury to the child. Id.

> "[E]vidence is not sufficient
> to support a conviction if it
> engenders only a suspicion or even
> a probability of guilt.
> Conviction cannot rest upon
> conjecture.  The evidence must be
> such that it excludes every
> reasonable hypothesis of
> innocence.  The giving by the
> accused of an unclear or
> unreasonable or false explanation
> of his conduct or account of his
> doings are matters for the jury to
> consider, but they do not shift
> from the Commonwealth the ultimate
> burden of proving by the facts or

- 16 -

> the circumstances, or both, that
> beyond all reasonable doubt the
> defendant committed the crime
> charged against him."

Hyde v. Commonwealth, 217 Va. 950, 955, 234 S.E.2d 74, 78 (1977)

(citation omitted).

The Commonwealth prosecuted Tate on the theory that she omitted to seek treatment for the child's initial injuries and then permitted the child to be injured again. Tate contends that her failure to promptly seek medical attention did not contribute to the seriousness of the child's injuries. Indeed, the evidence proved, and the Commonwealth concedes, that the child's injuries did not become worse from the lack of medical care. Moreover, no evidence in the record tended to prove that the child's injuries became more serious because Tate failed to seek medical attention for the child on August 18. The record contains no evidence that any treatment was needed or provided. When the doctors examined the child and determined the nature and extent of the injuries, the doctors prescribed no treatment for the injuries. Thus, the issue is whether the evidence supports the trial judge's ruling that Tate "permit[ted] serious injury" to the child in violation of Code § 18.2-371.1(A) by entrusting her to Brown on August 18, after knowing that he had inflicted serious injury on the child three days earlier.

The evidence fails to prove that Tate knew her child was at risk for serious injury and, by "omission or refusal" to act,

- 17 -

allowed the child to be injured further by entrusting her child to Brown on August 18.  On August 15, Tate had observed several "scratch marks on [the child's] forehead and her cheek and the mark on her lip."  When Tate questioned Brown about the child's injuries, Brown, who had cared for the child that day, informed Tate that the child "fell running down the sidewalk."  Tate accepted this explanation as a plausible accounting for the child's injuries.  Tate testified that when she bathed the child, she had no marks or bruises on her body.

Tate spent an uneventful weekend with Brown and the child. During the weekend while she cared for the child, Tate did not observe any other marks, bruises, or injuries.  No evidence negated the hypothesis that the child's injuries on August 15 were consistent with injuries she might have received while she ran down the sidewalk.  See Commonwealth v. Smith, 259 Va. 780, 783, ___ S.E.2d ___, ___ (2000) (holding that where proof relied upon is wholly circumstantial, "'to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence'").  Accordingly, no evidence proved that Tate was aware or should have been aware that Brown had injured the child.

No evidence proved the child had "extensive cuts and bruises" on her body prior to August 18.  On cross-examination, the social worker corrected her testimony when confronted with her notes.

- 18 -

Although the child's injuries may have been suspicious, it was just as likely that Tate, believing Brown's explanation that the child injured herself while playing, unknowingly and unintentionally entrusted the child to Brown's care on August 18. Tate testified that when she saw the additional bruises on August 18, she was scared and did not know what to do. She told the social worker that medical care was expensive and that she intended to take the child to her regularly scheduled pediatric appointment on August 20.

Dr. Foster, who examined the CT scan and MRI, testified that the internal hemorrhages likely did not produce any observable symptoms except possibly "a slight increase in sleepiness or the baby might not be as active as usual." He further testified that "they are the kind of symptoms that are hard sometimes to realize what they are."

In short, no evidence proved that Tate acted willfully or willfully omitted to do anything that endangered her child. "[I]nattention and inadvertence have not been heretofore equated with actions taken willfully, thus, making them subject to criminal penalty." Ellis v. Commonwealth, 29 Va. App. 548, 556, 513 S.E.2d 453, 457 (1999). To prove the element of "willful," the evidence must establish more than bad judgment. "'Willful' generally means an act done with a bad purpose, without justifiable excuse, or without grounds for believing it was

lawful."  Id. at 554, 513 S.E.2d at 456.  It connotes a perverse state of mind.  See Snead v. Commonwealth, 11 Va. App. 643, 647, 400 S.E.2d 806, 807 (1991).

Therefore, I would hold that the evidence is insufficient to support the trial judge's finding that Tate, by willful act or omission, permitted serious injury to the child.