598 S.E.2d 778

**Angela M. HODGES**

v.

**COMMONWEALTH of Virginia, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT, ex rel. COMPTROLLER OF VIRGINIA, ex rel. Phyllis Hodges.**

**Record No. 2182–03–3.**

Court of Appeals of Virginia,
Salem.

July 13, 2004.

Coleman, J., dissented and filed opinion.

---

David D. Beidler (Legal Aid Society of Roanoke Valley, on briefs), Roanoke, for appellant.

Jack A. Maxwell, Special Counsel (Jerry W. Kilgore, Attorney General; Craig M. Burshem, Senior Assistant Attorney

General; Beth J. Edwards, Regional Special Counsel; Alice G. Burlinson, Regional Special Counsel, on brief), for appellee.

Present: BUMGARDNER and McCLANAHAN, JJ., and COLEMAN, Senior Judge.

ELIZABETH A. McCLANAHAN, Judge.

Angela Hodges appeals a circuit court order affirming an administrative support order issued by the Commonwealth of Virginia, Department of Social Services, Division of Child Support Enforcement (DCSE), requiring reimbursement of a public assistance debt incurred on behalf of her minor child. She contends that Code § 63.2–1908 precludes DCSE from assessing the debt against her. For the reasons that follow, we affirm the trial court.

## I. Background

Angela M. Hodges and Ronald R. Hodges are the parents of N., born in 1989. From 1990 to 1995, N. resided with her paternal grandmother, Phyllis Hodges. During that time, Phyllis Hodges received Temporary Assistance for Needy Families (TANF) benefits from the Department of Social Services for the care of N. Ronald Hodges reimbursed the Department of Social Services for all but $2,860 of the TANF monies paid for N's benefit. In 1995, N. returned to her parents' home and continues to reside there.

In 2002, DCSE issued an administrative support order seeking reimbursement from Angela Hodges for the balance of the TANF moneys paid on behalf of N. The order allowed for a payment of $65 per month for each of the months TANF benefits were received for N.

Angela Hodges is not currently receiving any public assistance moneys, including TANF. However, the household does receive food stamps in the form of an electronic benefit card, and Medicaid assistance for the benefit of the children.

Angela Hodges appealed the administrative support order to the juvenile and domestic relations district court, which dismissed the order. DCSE appealed the decision to the

circuit court, which found that the code section did not bar DCSE from collecting the debt.[1] This appeal followed.

## II. Analysis

 On appeal, questions of statutory interpretation are reviewed *de novo* by this Court. Issues of "pure statutory interpretation [are] the prerogative of the judiciary." *Sims Wholesale Co. v. Brown–Forman Corp.*, 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996). "This axiom stems from basic principles of separation of powers. 'It is emphatically the province and duty of the judicial department to say what the law is.'" *Finnerty v. Thornton Hall, Inc.*, 42 Va.App. 628, 635, 593 S.E.2d 568, 571 (2004) (quoting *Marbury v. Madison*, 5 U.S. 137 (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). Therefore, "we review the trial court's statutory interpretations and legal conclusions *de novo*." *Rollins v. Commonwealth*, 37 Va.App. 73, 79, 554 S.E.2d 99, 102 (2001) (citing *Timbers v. Commonwealth*, 28 Va.App. 187, 193, 503 S.E.2d 233, 236 (1998)).

Code § 63.2–1908 provides that payment of public assistance money for a child constitutes a debt to DCSE by noncustodial parents. In pertinent part, the statute states:

Debt created by an administrative support order under this section shall not be incurred by nor at any time be collected from a noncustodial parent who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.

 The issue in this appeal is simply whether, in the context of the statute, the term "public assistance moneys" includes food stamps and Medicaid assistance. The appellant contends that because her household receives these two forms of public assistance for the benefit of her children DCSE is prohibited by the statute from collecting the outstanding TANF debt.

---

1. The trial court also found that Angela Hodges was not a noncustodial parent as contemplated in Code § 63.2–1908, but appellant does not appeal that part of the trial court's finding.

■ "In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." *Crown Cent. Petroleum Corp. v. Hill,* 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997) (citing *City of Winchester v. American Woodmark Corp.,* 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)). In Code § 63.2–1908, the legislature chose to use the phrase "public assistance moneys" rather than simply "public assistance." In some parts of the statute, the phrase "public assistance" is used; in other parts, "public assistance moneys" is used. The question then becomes what the legislature meant by including the word "moneys."

■ "It is a basic rule of statutory construction that a word in a statute is to be given its everyday, ordinary meaning unless the word is a word of art." *Stein v. Commonwealth,* 12 Va.App. 65, 69, 402 S.E.2d 238, 241 (1991) (citing *Lovisi v. Commonwealth,* 212 Va. 848, 850, 188 S.E.2d 206, 208, *cert. denied,* 407 U.S. 922, 92 S.Ct. 2469, 32 L.Ed.2d 808 (1972)). The ordinary use of the word money, or moneys in plural, is cash or currency. *See Black's Law Dictionary* 695 (abridged 6th ed. 1991) (defining money as "coins and paper currency used as circulating medium of exchange"). Money, including forms other than cash or currency (i.e. checks, debit cards, credit cards), is a medium of exchange that is universally accepted across the country for the purpose of purchasing, or paying for, a wide variety of commodities, which includes both goods and services. In the two code sections of the Act where the legislature used the words "public assistance moneys," Code §§ 63.2–1908 and 63.2–1909, it is placed in the context of a payment, or money being paid.

■ "Proper construction seeks to harmonize the provisions of a statute both internally, and in relation to other statutes." *Commonwealth v. Wallace,* 29 Va.App. 228, 233, 511 S.E.2d 423, 425 (1999). In *Wallace* this Court wrote:

> The words chosen by the legislature in drafting a statute derive meaning from both definition and context and, therefore, we divine legislative intent by construing an enactment as a whole, together with companion statutes, if any. The

legal maxim, *noscitur a sociis,* instructs that "a word takes color and expression from the purport of the entire phrase of which it is a part, and ... must be read in harmony with its context." *Turner v. Commonwealth,* 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983). Similarly, legislative purpose can best be " 'ascertained from the act itself when read in the light of other statutes relating to the same subject matter.' " *Moreno v. Moreno,* 24 Va.App. 190, 197, 480 S.E.2d 792, 796 (1997). The doctrine of *pari materia* teaches that " 'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.' " *Id.* at 198, 480 S.E.2d at 796. *Id.* at 233–34, 511 S.E.2d at 425.

Some forms of public assistance are provided as cash transfers [2] and others are not. Code § 63.2–100 provides definitions for some of the applicable terms. "Public assistance" is defined as "Temporary Assistance for Needy Families (TANF); auxiliary grants to the aged, blind and disabled; medical assistance; energy assistance; food stamps; employment services; child care; and general relief." TANF is defined as a program in which a "relative can receive monthly cash assistance for the support of his eligible children." Code § 63.2–100. On the other hand, food stamps are distributed in the form of coupons or an electronic benefit card in order to obtain nutritional food (*see* 7 U.S.C. § 2011 *et seq.* (2004)). Food stamps are food-only assistance and by law are not to be used to purchase or pay for anything other than foodstuffs that are approved by the food stamp program. Medicaid consists of reimbursements to medical providers for eligible services they have rendered to eligible patients (*see, e.g.,* Code § 32.1–310). Neither food stamps nor Medicaid assistance provide a cash payment to the recipients that allows them to use that benefit to purchase or pay for goods or services other than those approved by the respective programs. In the case

2. "Cash" in this context should also be understood to include other forms of universally accepted currency, such as checks.

of Medicaid, recipients do not receive the benefit directly. The government pays the medical providers directly.

If the legislature intended to include all forms of public assistance as defined by Code § 63.2–100, it would have only used the phrase "public assistance." To interpret the phrase "public assistance moneys" to mean all forms of public assistance, the word "moneys" would add nothing to the term "public assistance" and would be deprived of any effect. The word "moneys" would be rendered superfluous.

 The Virginia Supreme Court has long held that "when analyzing a statute, we must assume that 'the legislature chose with care, the words it used . . . and we are bound by those words when we interpret the statute.' " *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting *Barr v. Town and Country Props.*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)); *see also Huffman v. Kite*, 198 Va. 196, 199, 93 S.E.2d 328, 330–31 (1956); *Frazier v. Commonwealth*, 27 Va.App. 131, 135, 497 S.E.2d 879, 881 (1998). Virginia courts are bound, where possible, to give meaning to every word of a statute. *See, e.g., Monument Assoc. v. Arlington County Bd.*, 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991); *Baker v. Commonwealth*, 28 Va.App. 306, 504 S.E.2d 394 (1998). A word or clause contained in a statute may only be rejected as surplusage if it "appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning," or is otherwise repugnant to the rest of the statute. *Burnette v. Commonwealth*, 194 Va. 785, 788–89, 75 S.E.2d 482, 484–85 (1953). "[N]o part of an act should be treated as meaningless unless absolutely necessary." *Garrison v. First Federal Savings and Loan of South Carolina*, 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991) (citing *Raven Red Ash Coal Corp. v. Absher*, 153 Va. 332, 335, 149 S.E. 541, 542 (1929)).

 To ensure that the word "moneys" is given meaning this Court must interpret the phrase "public assistance moneys" to exclude non-monetary public assistance.

When the legislature exempted recipients of monetary public assistance from the obligation of repaying prior support, it intended to avoid a meaningless and inefficient exercise of giving money to those in need with one hand while requiring it to be paid back with the other. That would be the result if the noncustodial parent received monetary public assistance at the time DCSE sought repayment of prior public assistance. However, in the case of non-monetary support, no such result is reached. Neither food stamps, Medicaid benefits, nor other forms of non-monetary assistance, can legally be converted to cash.

The Court finds that holding recipients of non-monetary assistance subject to the obligations of Code § 63.2–1908 does not frustrate the purpose of that statute. The "public assistance moneys" exception applies only to those receiving actual monetary assistance from the Commonwealth. Food stamps and Medicaid assistance are not "public assistance moneys" as contemplated in Code § 63.2–1908. The legislature did not exempt noncustodial parents receiving those forms of public assistance from reimbursing DCSE for moneys expended on behalf of their children. As a result, Hodges does not come under the statutory exception, and, as N.'s parent, must repay the support obligation pursuant to the administrative support order.

### III. Conclusion

Accordingly, we affirm the trial court's decision upholding the administrative support order requiring the appellant to reimburse DCSE for benefits extended on behalf of her child.

*Affirmed.*

COLEMAN, J., dissenting.

I agree with the majority that when we are called upon to interpret a statute we are not bound by a trial court's construction of the statute and that upon our *de novo* review and determination we are required to give "effect to the intent of the legislature." *Crown Central Petroleum Corp. v. Hill,* 254

Va. 88, 91, 488 S.E.2d 345, 346 (1997) (citing *City of Winchester v. American Woodmark Corp.*, 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)). Moreover, I agree with the majority that a word in a statute is to be given "its everyday, ordinary meaning unless the word is a word of art." *Stein v. Commonwealth*, 12 Va.App. 65, 69, 402 S.E.2d 238, 241 (1991) (citing *Lovisi v. Commonwealth*, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972)). However, by construing the word "money[s]" so narrowly as to include only "coins and paper currency" the majority disregards the "everyday, ordinary meaning" of the word "money" in the modern world of business and government and fails to give "effect to the intent of the legislature."

Here, the obvious intent of the legislature in enacting the part of Code § 63.2–1908 under review was to relieve a noncustodial parent of having to repay a debt created by an administrative support order during such time that the parent "is the recipient of public assistance moneys for the benefit of minor dependent children." As appellant noted, "the obvious reason for the statutory exception to assessment and collection is to prohibit the Commonwealth from depleting the extremely limited financial resources of families with children as needing and receiving public assistance." The legislature merely acknowledged the unfairness of collecting a debt for TANF benefits paid from the noncustodial parent during the time that the parent is receiving "public assistance moneys for the benefit of minor dependent children." Here, the public assistance moneys paid for the minor dependent children were food stamps and Medicaid benefits. In other words, public policy did not condone taking "public assistance moneys" paid to a parent for a minor dependent child during the time the parent is receiving such benefits to repay other public assistance funds that were paid on behalf of the noncustodial parent.

Furthermore, in today's world I seriously doubt that any public assistance benefits or "moneys" are paid in "coins and paper currency" or cash. Proper government accounting would require that such public assistance benefits be paid by check, voucher, coupon, etc.; not by "coins or paper currency." The majority has adopted the most narrow and restrictive

meaning of the word "moneys," in disregard of the "everyday, ordinary" meaning of the word in the context of the legislature's intent. *Black's Law Dictionary* 1021 (7th ed. 1999) defines "money[s]" as "assets that can be easily converted to cash." *Webster's Unabridged Dictionary* 1160 (2d ed. 1983) variously defines "money[s]" as "any substance or article used as money, as bank notes, checks, etc.;" and as "property, possessions, wealth." This broader definition of "money[s]" was clearly what the legislature intended by enacting Code § 63.2–1908 and is the only construction that achieves a reasonable and meaningful result.

For the foregoing reasons, I dissent and I would reverse the trial court's decision upholding the administrative support order.